# HOMER E. GRAFTON, PLAINTIFF IN ERROR *v.* THE UNITED STATES.

## IN ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 358.　Argued March 18, 19, 1907.—Decided May 27, 1907.

The prohibition of double jeopardy is applicable to all criminal prosecutions in the Philippine Islands.

A person is not put in second jeopardy unless his prior acquittal or conviction was by a court having jurisdiction to try him for the offense charged.

The judgment of a court-martial having jurisdiction to try an officer or soldier for a crime is entitled to the same finality and conclusiveness as to the issues involved as the judgment of a civil court in cases within its jurisdiction is entitled to.

General courts-martial may take cognizance, under the 62d article of war, of all crimes, not capital, committed against public law by an officer or soldier of the Army within the limits of the territory within which he is serving; and, while this jurisdiction is not exclusive, but only concur-

rent with that of the civil courts, if a court-martial first acquires jurisdiction its judgment cannot be disregarded by the civil courts for mere error, or for any reason not affecting the jurisdiction of the court rendering it.

The same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government.

Although the same act when committed in a State might constitute two distinct offenses, one against the United States and the other against the State, for both of which the accused might be tried, that rule does not apply to acts committed in the Philippine Islands. The government of a State does not derive its powers from the United States, while that of the Philippine Islands does owe its existence wholly to the United States.

A soldier in the army, having been acquitted of the crime of homicide, alleged to have been committed by him in the Philippine Islands, by a military court-martial of competent jurisdiction proceeding under authority of the United States, cannot be subsequently tried for the same offense in a civil court exercising authority in that Territory.

THE facts are stated in the opinion.

*Mr. Clarence S. Nettles* and *Mr. John H. Atwood,* with whom *Mr. Frederic D. McKenney* was on the brief, for plaintiff in error:

The plaintiff in error, having been tried and acquitted of the alleged homicide by a lawfully constituted court, having jurisdiction of his person and the subject matter of the offense, his second trial unlawfully put him in jeopardy of punishment a second time for the same offense, in direct violation of the Fifth Amendment, and sec. 5 of the Act of July 1, 1902 (32 Stat. at L. 691, chap. 1369).

Our courts have always guarded, with jealous care, the constitutional right of accused persons not to be twice placed in jeopardy for the same offense. *Ex Parte Lange,* 18 Wall. 205; 1 Bishop on Criminal Law, § 979; *The Abbottsford,* 92 U. S. 440; *Coleman* v. *Tennessee,* 97 U. S. 509; *People* v. *Minor,* 144 Illinois, 308; *State* v. *Bowen,* 45 Minnesota, 145; *State* v. *Lange,* 96 Tennessee, 668.

Plaintiff in error was tried and acquitted by a lawfully con- stituted court, having jurisdiction of his person and the sub- ject matter, upon a valid indictment, upon the same offense alleged in the indictment upon which he was tried in the court below. *Ex parte Milligan,* 4 Wall. 123; *Ex parte Davidson,* 21 Fed. Rep. 620; *Ex parte Reed,* 100 U. S. 13; *In re McVey,* 23 Fed. Rep. 878.

The charge and specifications upon which the plaintiff was arraigned and tried in the general court-martial, conformed to the pleading and practice of military courts, was sufficient to support a valid judgment, and cannot be attacked in a collateral proceeding.

Neither this court, nor any other civil tribunal has jurisdic- tion or authority to adjudicate any question relative to the sufficiency of the pleading and practice of courts-martial, or to undertake any inquiry as to the proceedings of a court- martial, except for the purpose of ascertaining two things: First, whether the court had jurisdiction of the person and the subject matter of the offense. Second, whether, having ju- risdiction and having arrived at its conclusions, the sentence imposed is warranted by law. A court-martial, as a legally constituted court, having the jurisdiction, has the right to determine for itself the practice and procedure under the Articles of War, and whether or not the charges and specifica- tions are properly pleaded. *In re McVey,* 23 Fed. Rep. 878.

The offense with which the plaintiff is charged, and for the commission of which he now stands in jeopardy of punishment, is in fact identical with that of which he was acquitted by the judgment of the general court-martial. 2 Am. & Eng. Enc. of Law, 247; *Hoffman* v. *State,* 20 Maryland, 425; *Holt* v. *State,* 38 Georgia, 137; *State* v. *Cooper,* 13 N. J. Law, 361; *State* v. *Cameron,* 50 Tennessee, 78; *Wilson* v. *State,* 24 Connecticut, 57; *Roberts* v. *State,* 14 Georgia, 8; *State* v. *Keogh,* 13 La. Ann. 243.

On the rule of construction established by these authorities to the facts of this case no doubt remains as to the identity

of the offense alleged in the indictment with that for which the plaintiff was tried by the court-martial. It is the same transaction. The two cases rest upon the same facts, and have been testified to by the same witnesses. The accused is the same, and he is charged with the homicide of the same person, at the same time and place, and under the same circumstances. What more could be asked to establish the identity of the transaction set forth in the two records?

*The Solicitor General* for defendant in error:

The acquittal by court-martial was no bar to the civil prosecution. The precise point has never been adjudged by this court. *Ex parte Mason,* 105 U. S. 696, 699. The military and civil jurisdictions are not mutually exclusive; the former takes cognizance of the offense against the military organization and discipline, the latter of the crime against the whole community. An officer or soldier of the army who commits an act anywhere within the territorial jurisdiction of the United States, which is criminal both by the military and the general law, is subject to trial by the latter in preference to the former. An act punishable by the laws of the land is to be punished according to those laws, that is, by the competent ordinary tribunals of the State or Territory in which the offense was committed. Our Articles of War are based on the British Mutiny Acts, which have always provided in terms or in substance that they shall not be construed to exempt any officer or soldier whatsoever from being proceeded against by due course of law. 4 Geo. IV, c. 81, § 17; 3 & 4 Will. IV, c. 5, § 45; 3 & 4 Vict. c. 37, § 5; see also Tytler's Essay on Military Law, 153, 154; Winthrop's Military Law, 2d ed. 124, 396, 1076; 7 Op. A. G. 561.

Practically, as to all acts of ordinary violence committed within the interior of the army, the civil authority leaves to the military complete and exclusive jurisdiction. But a felony is distinguishable, whether committed within or without the army. In the case of murder it is the right of the State to

move the courts to apply the laws of the land to the criminal. 6 Op. A. G. 413, 506; see also *United States* v. *Amy,* cited in *Negro Ann Hammond* v. *State,* 14 Maryland, 135; *Moore* v. *Illinois,* 14 How. 13; *Fox* v. *State of Ohio,* 5 How. 434; *United States* v. *Marigold,* 9 How. 569. When a man stands in the particular dual relation of criminal liability to a court-martial and to the civil courts, he may be punished by each without involving double jeopardy, and no distinction can be drawn between different offenses against different sovereigns and different offenses against the same sovereign. *United States* v. *Clark,* 31 Fed. Rep. 710; *United States* v. *Cashiel,* Fed. Cas. 14,744; *Morey* v. *Comm'lth,* 108 Massachusetts, 433, cited in *Carter* v. *McClaughry,* 183 U. S. 365; *United States* v. *Cruikshank,* 92 U. S. 542; *Moore* v. *People,* 14 How. 17; *United States* v. *Barnhart,* 22 Fed. Rep. 285; *State* v. *Taylor,* 133 N. Car. 755; *Abbott* v. *State,* 75 N. Y. 602; *Campbell* v. *People,* 109 Illinois, 565. The military authorities establish these doctrines as a matter of existing practice. Benet, Military Laws and Courts-Martial, 100, 102; Dig. Op. J. A. G., par. 306, 309; p. 92; *id.* par. 102, p. 38; *id.* par. 148, p. 48.

The Court of First Instance had jurisdiction. However the cases may stand as between national and local jurisdiction, civil or criminal, over a reservation of the United States in one of the original States or in a State subsequently admitted, there is no doubt of the plenary power of Congress anywhere in a Territory. *United States* v. *Cornell,* 2 Mason, 60; *People* v. *Godfrey,* 17 Johns. 225; *Comm'lth* v. *Young,* Brightly (Pa.), 302; *Fort Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. 525; *United States* v. *Stahl,* 1 Woolw. 192; *United States* v. *Ward,* 1 Woolw. 1; *Painter* v. *Ives,* 4 Nebraska, 122; *Marion* v. *State,* 16 Nebraska, 349; *McCracken* v. *Todd,* 1 Kansas, 148; *Clay* v. *State,* 4 Kansas, 49; *United States* v. *McBratney,* 104 U. S. 621; *Ex parte Crow Dog,* 109 U. S. 556; *United States* v. *Kagama,* 118 U. S. 375; *In re Wilson,* 140 U. S. 575; *Mormon Church* v. *U. S.,* 136 U. S. 1.

Congress has created the territorial courts, and authorized

and approved their general civil and criminal jurisdiction. R. S. Title XXIII, c. 1, 2, especially §§ 1851, 1868, 1895, 1910, 1925; *Ex parte Crow Dog*, 109 U. S. 560; *Ex parte Gon-Shay-Ee*, 130 U. S. 343; *Franklin* v. *United States*, 1 Colorado, 35. Congress has not distinguished between crimes committed by or against military persons or between crimes so committed on or off a military reservation. In defining and punishing crimes subject to exclusive Federal jurisdiction, Congress had in mind the case of a Federal reservation in a State and not the case of a Territory in general, or of a reservation within a Territory. As Congress has exclusive jurisdiction everywhere in a Territory, and has made no exception regarding a military reservation, it would seem that Congress intends the jurisdiction over ordinary crimes to be exercised by the local courts.

There is competent civil judicature in the Philippines established by the legislature. During the war and insurrection there was at first a suspension of the civil courts, but they were gradually restored with their former jurisdiction, first on the civil and then on the criminal side. G. O. 58, 1, Pub. Laws Phil. Com. pp. 1082, 1095; Act of June 11, 1901, *id*. 252, 262; Act of August 5, 1901, *id*. 375; Act of May 16, 1902, *id*. 963. The civil government has passed laws in aid of the military control of reservations for military uses, but they plainly assert the civil jurisdiction so far as it does not interfere with military administration or use. Act of November 24, 1902, 2 Pub. Laws, 157; Act of Sept. 3, 1903, 3 *id*. 9; act of April 28, 1904, *id*. 327. There is no substantial distinction between the case of a military reservation in the Philippines and in an organized Territory of the United States. Congress has directed that all laws passed by the Philippine government shall be reported to Congress, and reserved the power to annul the same. Act of July 1, 1902, 32 Stat. 691.

The reservation by the President of lands in the Philippines for military purposes merely subjects them to the proprietary control of the National Government, and does not withdraw

them from the operation of laws passed by the commission nor from the jurisdiction of the regularly constituted authorities. 1 Op. A. G. Phil. I, 326; *id.* 332; 4 O. G. 61. No reservation of exclusive jurisdiction can be claimed under the order of reservation itself. G. O. 34, War Dept. Oct. 13, 1903.

Finally, it is found here also that the existing military law of the United States holds that territorial courts take jurisdiction of a crime committed on a reservation. Dig. Op. J. A. G. par. 96, p. 36; *id.* par. 101, p. 38; *id.* par. 2437, p. 687; *id.* par. 2439, p. 687.

Plaintiff in error Grafton was not entitled to be indicted by a grand jury or tried by a petit jury. It is well settled that the Sixth Amendment to the Constitution does not apply to prosecutions by a State. *Hurtado* v. *California,* 110 U. S. 516; *Maxwell* v. *Dow,* 176 U. S. 581, and cases cited. The right to trial by jury has not been extended to our territorial possessions. *Hawaii* v. *Mankichi,* 190 U. S. 197; *Dorr* v. *United States,* 195 U. S. 138, 149.

The claim is made here that because defendant was in the Philippines in pursuance of his duty by virtue of military orders, the decision in the *Dorr* case does not apply. But anyone who violates law is to be tried by the law violated, whether in a State or a Territory or a possession of the United States. *In re Ross,* 140 U. S. 453. No objection can be predicated on the literal restriction of the 59th Article of War to "any offense against the person or property of any *citizen* of the United States." The *Ross* case is authority for the conclusion that the law means not only citizens but "also all who though not strictly citizens, are . . . equally entitled to the care and protection of the Government." 140 U. S. pp. 475, 476, citing 1 Hale's Pleas of the Crown, 542. While citizens and others within the United States are entitled to trial by jury in criminal cases arising under the Constitution and laws of the United States, neither citizens nor others, whether in the military service or not, are so entitled before a tribunal created by or under the authority of the United States, either in a

foreign country or in a territorial possession of the United States. 140 U. S. p. 464, citing *Cook* v. *United States*, 138 U. S. 157, 181.

If soldiers in the Philippines are to be tried in accordance with the constitutional provisions, but other citizens and the native inhabitants have no such right, there would be a violation of the guarantee of equal protection of the laws. Sec. 5, Philippine Government Act.

Plaintiff in error, Grafton, was not in the performance of his military duty, and is not justifiable. This was not the case of an escaping felon. *Drury* v. *Lewis*, 200 U. S. 1, 8. Unless the accused has reasonable ground of apprehension at the time, the justification of self-defense will fail. The rule that one may pursue his adversary until he has secured himself from all danger, and may even kill him in so doing (1 East P. C. 271), applies only where the aggressor is retreating in order to gain advantage so as to renew the conflict; the right to pursue and kill a retreating assailant ceases as soon as the necessity for defense has ceased and the danger is no longer immediate and impending. 4 Bl. Com. 185; *Morgan* v. *State*, 67 S. W. Rep. 420; *Johnson* v. *State*, 50 S. W. Rep. 343; *People* v. *Hecker*, 109 California, 451; *Luckinbill* v. *State*, 52 Arkansas, 45; *Oregon* v. *Conally*, 3 Oregon, 69; *State* v. *Scott*, 4 Ired. 409; *State* v. *Harris*, 4 Jones, 190; *Dill* v. *State*, 25 Alabama, 15; *Dyson* v. *State*, 26 Mississippi, 362; *Holmes* v. *State*, 23 Alabama, 24; *Carroll* v. *State*, 23 Alabama, 33. The act was plainly deliberate here, because Grafton knew, or ought to have known under the circumstances, that he need not shoot again, and the killing was unnecessary if not wanton.

Mr. Justice Harlan delivered the opinion of the court.

The writ of error brings up for review a judgment of the Supreme Court of the Philippine Islands, affirming a judgment of the Court of First Instance in the Province of Iloilo, by which the plaintiff in error, Grafton, was adjudged guilty

of homicide as defined by the Penal Code of the Philippines, and sentenced to imprisonment for twelve years and one day. The history of this criminal prosecution, as disclosed by the record, is as follows:

Homer E. Grafton, a private in the Army of the United States, was tried before a general court-martial convened in 1904 by Brigadier General Carter, commanding the Department of the Visayas, Philippine Islands, upon the following charge and specifications: "Charge: Violation of the 62nd Article of War: Specification I. In that Private Homer E. Grafton, Company G, 12th Infantry, being a sentry on post, did unlawfully, willfully, and feloniously kill Florentino Castro, a Philippino, by shooting him with a U. S. magazine rifle, caliber .30. This at Buena Vista Landing, Guimaras, P. I., July 24th 1904. Specification II. In that Private Homer E. Grafton, Company G, 12th Infantry, being a sentry on post, did unlawfully, willfully, and feloniously kill Felix Villanueva, a Philippino, by shooting him with a U. S. magazine rifle, caliber .30. This at Buena Vista Landing, Guimaras, P. I., July 24th 1904."

By the 58th Article of War it is provided: "In time of war, insurrection, or rebellion, larceny, robbery, burglary, arson, mayhem, manslaughter, murder, assault and battery with an intent to kill, wounding, by shooting or stabbing, with an intent to commit murder, rape, or assault and battery with an intent to commit rape, shall be punishable by the sentence of a general court-martial, when committed by persons in the military service of the United States, and the punishment in any such case shall not be less than the punishment provided, for the like offense, by the laws of the State, Territory, or district in which such offense may have been committed."

The 62d Article of War is in these words: "All crimes not capital, and all disorders and neglects which officers and soldiers may be guilty of to the prejudice of good order and military discipline, though not mentioned in the foregoing articles of war, are to be taken cognizance of by a general, or a

regimental, garrison, or field officers' court-martial according to the nature and degree of the offense, and punished at the discretion of such court."

The accused pleaded not guilty to each specification as well as to the charge. At the trial he made the following admission in writing: "I admit that on July 24th, 1904, I was a member of a detachment of Company G, 12th Infantry, on duty at Buena Vista Landing, Guimaras, P. I.; that on July 24th, 1904, I was regularly detailed on guard and was a member of the first relief. That I was on post between the hours of 2 and 4 p. m. In the execution of my duty I shot two male Philippinos with a U. S. magazine rifle, caliber .30."

The court found the soldier not guilty as to each specification and not guilty of the charge. His acquittal was approved by the Department Commander on August 25th, 1904, and he was released from confinement and restored to duty. It appeared in proof that the accused was of excellent character; and it is stated in the opinion of the Supreme Court of the Philippines that, before holding the court-martial, the Department Commander offered to submit the case to the Court of First Instance of the Province, but it did not appear what action was taken by the judge of that court in reference to that offer.

On the twenty-eighth day of November, 1904, the prosecuting attorney of the Province of Iloilo, Philippine Islands, filed a criminal information or complaint in the name of the United States, in the Court of First Instance of that Province, as follows: "The subscriber accuses Homer E. Grafton of the crime of assassination, committed in the manner following: That on the 24th of July, 1904, and in the barrio of Santo Rosario, within the jurisdiction of the municipality of Buena Vista, Guimaras Island, province of Iloilo, Philippine Islands, the said accused, with illegal intention and maliciously and without justification and with treachery and deliberate premeditation killed Felix Villanueva in the manner following: That on said day and in said barrio the said accused, Homer E.

Grafton, with the rifle that he carried at the time, known as the United States magazine rifle c. .30, fired a shot directly at Felix Villanueva, causing with said shot a serious and necessarily fatal wound, and in consequence of said wound the aforesaid Felix Villaneuva died immediately after the infliction thereof, in violation of the law."

When the above information was filed, as well as when the court-martial convened, the Philippines Penal Code provided as follows:

"Art. 402. He who shall kill his father, mother, or child, whether legitimate or illegitimate, or any other of his ascendants or descendants or his spouse, shall be punished as a parricide, with the penalty of *cadena perpetua* to death.

"Art. 403. He who, without being included in the preceding article, shall kill any person, is guilty of assassination if the deed is attended by any of the following circumstances: (1) With treachery; (2) For price or promise of reward; (3) By means of flood, fire, or poison; (4) With deliberate premeditation; (5) With vindictiveness, by deliberately and inhumanly increasing the suffering of the person attacked. A person guilty of assassination shall be punished with the penalty of *cadena temporal* in its maximum degree to death.

"Art. 404. He who, without being included in the provisions of article 402, shall kill another without the attendance of any of the circumstances specified in the foregoing article is guilty of homicide. A person guilty of homicide shall be punished with the penalty of *reclusión temporal.*"

At the trial in the Court of First Instance the accused interposed a demurrer, alleging that that court had no jurisdiction to try him for the offense charged for the following reasons: The acts constituting the alleged offense were committed within the limits of a military reservation of the United States and by a soldier duly enlisted in the Army of the United States, in the line of duty; the Court of First Instance of the Philippine Islands had no jurisdiction of the persons of officers or enlisted men of the United States Army for offenses com-

mitted by them in the performance of military duty; such courts were not constitutional courts as contemplated by the 3d Article of the Constitution of the United States, and were without jurisdiction to try causes of which such constitutional courts have exclusive jurisdiction; the courts of the Philippine Islands could not deprive the accused of his constitutional privilege of trial by jury; and no court other than a military tribunal, constituted by the authority of the United States, could try the accused upon an indictment which had not been found or presented by a grand jury.

The demurrer also stated that if the court held that it had jurisdiction to try the accused, then he pleaded, in bar of the proceedings against him, the judgment of the general court-martial acquitting him of the offense of which he was found guilty in the Court of First Instance.

The demurrer and plea were both overruled, the trial court holding that it had jurisdiction to try the accused and that the plea of jeopardy based on his trial by court-martial was insufficient, in that the military court could not legally have taken cognizance of the crime of assassination charged in the information, but only of a violation of the 62d Article of War.

A trial was then had in the Court of First Instance before the judge thereof, without a jury, and resulted in a judgment declaring Grafton guilty of "an infraction of article 404 of said Penal Code, and of the crime of homicide, in killing the said Felix Villanueva, at the time and place and in the manner hereinbefore stated, and in view of the extenuating circumstances before remarked upon, he is sentenced by the court to imprisonment in such prison as the law directs, for the term of twelve years and one day, it being the minimum term of the mimimum degree of *reclusión temporal* which is the penalty for homicide, and to pay the costs of the prosecution, and to suffer all the other accessories of said sentence." The case was carried to the Supreme Court of the Philippines, where the judgment was affirmed by a divided court. The plea of double jeopardy was overruled by that court and three of the seven

judges were of opinion that, under the facts proven at the trial, the accused should have been acquitted.

The principal contention of the accused is that his acquittal by the court-martial forbade his being again tried in the civil court for the same offense. He bases this contention, in part, upon that clause of the Fifth Amendment of the Constitution, providing, "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb;" and, in part, upon the act of Congress of July 1st, 1902, providing temporarily for the administration of the affairs of civil government in the Philippine Islands, and which act declared that "no person for the same offense shall be twice put in jeopardy of punishment." 32 Stat. 691. That the prohibition of double jeopardy is applicable to all criminal prosecutions in the Philippines was settled upon full consideration in the recent case of *Kepner* v. *United States*, 195 U. S. 100, 124, 126, 129, 130, in which it was held that by force of the above act of Congress such prohibition was carried to the Philippines and became the law of those Islands. In the same case it was said—what may be repeated as applicable to the present case—that "this case does not call for a discussion of the limitations of such power [the power of Congress] nor require determination of the question whether the jeopardy clause became the law of the Islands after the ratification of the treaty without Congressional action, as the act of Congress made it the law of these possessions when the accused was tried and convicted."

We assume as indisputable, on principle and authority, that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged. It is alike indisputable that if a court-martial has jurisdiction to try an officer or soldier for a crime, its judgment will be accorded the finality and conclusiveness as to the issues involved which attend the judgments of a civil court in a case of which it may legally take cognizance. In *Ex parte Reed*,

100 U. S. 13, 23, the court, referring to a court-martial, said: "The court had jurisdiction over the person and the case. It is the organism provided by law and clothed with the duty of administering justice in this class of cases. Having had such jurisdiction, its proceedings cannot be collaterally impeached for any mere error or irregularity, if there were such, committed within the sphere of its authority. Its judgments, when approved as required, rest on the same basis, and are surrounded by the same considerations which give conclusiveness to the judgments of other legal tribunals, including as well the lowest as the highest, under like circumstances. The exercise of discretion, within authorized limits, cannot be assigned for error and made the subject of review by an appellate court."

In *Ex parte Mason*, 105 U. S. 696, 699, the question arose whether a court-martial could lawfully sentence an officer of the Army, charged with the offense of attempting to kill a prisoner in the custody of the United States, to be imprisoned at hard labor in the penitentiary. The accused was tried under the 62d Article of War. The court said: "He has offended both against the civil and the military law. As the proper steps were not taken to have him proceeded against by the civil authorities, it was the clear duty of the military to bring him to trial under that jurisdiction. Whether, after trial by the court-martial, he can be again tried in the civil courts is a question we need not now consider. It is enough if the court-martial had jurisdiction to proceed, and what has been done is within the powers of that jurisdiction." It was objected, in that case, that the sentence was in excess of what the law allowed. The court referred to the 97th Article of War, which provided that "No person in the military service shall, under the sentence of a court-martial, be punished by confinement in a penitentiary, unless the offense of which he may be convicted would, by some statute of the United States or by some statute of the State, Territory or District in which such offense may be committed, or by the common law, as the same exists

in such State, Territory, or District, subject such convict to such imprisonment." It then proceeded: "Under this article, when the offense is one not recognized by the laws regulating civil society, there can be no punishment by confinement in a penitentiary. The same is true when the offense, though recognized by the civil authorities, is not punishable by the civil courts in that way. But when the act charged as 'conduct to the prejudice of good order and military discipline' is actually a crime against society which is punishable by imprisonment in the penitentiary, it seems to us clear that a court-martial is authorized to inflict that kind of punishment. The act done is a civil crime, and the trial is for that act. The proceedings are had in a court-martial because the offender is personally amenable to that jurisdiction, and what he did was not only criminal according to the laws of the land, but prejudicial to the good order and discipline of the army to which he belonged. The sixty-second article provides that the offender, when convicted, shall be punished at the discretion of the court, and the ninety-seventh article does no more than prohibit the court from sentencing him to imprisonment in a penitentiary in a case where, if he were tried for the same act in the civil courts, such imprisonment could not be inflicted." In *Carter v. Roberts*, 177 U. S. 496, 498, which was a case of the punishment under the judgment of a general court-martial of an officer of the Army, the court, after observing that every officer, before entering on the duties of his office, subscribes to the Articles of War enacted by Congress and places himself within the power of courts-martial to pass on any offense which he may have committed in contravention of them, said: "Courts-martial are lawful tribunals, with authority to finally determine any case over which they have jurisdiction, and their proceedings, when confirmed as provided, are not open to review by the civil tribunals, except for the purpose of ascertaining whether the military court had jurisdiction of the person and subject-matter, and whether, though having such jurisdiction, it had exceeded its powers

in the sentence pronounced." This language was repeated in *Carter* v. *McClaughry*, 183 U. S. 365, 380.

It thus appears to be settled that the civil tribunals cannot disregard the judgments of a general court-martial against an accused officer or soldier, if such court had jurisdiction to try the offense set forth in the charge and specifications; this, notwithstanding the civil court, if it had first taken hold of the case, might have tried the accused for the same offense or even one of higher grade arising out of the same facts.

We are now to inquire whether the court-martial in the Philippines had jurisdiction to try Grafton for the offenses charged against him. It is unnecessary to enter upon an extended discussion of that question; for, it is entirely clear that the court-martial had jurisdiction to try the accused upon the charges preferred against him. The 62d article of War, in express words, confers upon a general, or a regimental garrison, or field officers' court-martial, according to the nature and degree of the offense, jurisdiction to try "all crimes" not capital, committed in time of peace by an officer or soldier of the Army. The crimes referred to in that article manifestly embrace those not capital, committed by officers or soldiers of the Army in violation of public law as enforced by the civil power. No crimes committed by officers or soldiers of the Army are excepted by the above article from the jurisdiction thus conferred upon courts-martial, except those that are capital in their nature. While, however, the jurisdiction of general courts-martial extends to all crimes, not capital, committed against public law by an officer or soldier of the Army within the limits of the territory in which he is serving, this jurisdiction is not exclusive, but only concurrent with that of the civil courts. Of such offenses courts-martial may take cognizance under the 62d Article of War, and, if they first acquire jurisdiction, their judgments cannot be disregarded by the civil courts for mere error or for any reason not affecting the jurisdiction of the military court.

We are next to inquire whether having been acquitted by a

court-martial of the crime of homicide as defined by the Penal
Code of the. Philippines, could Grafton be subjected thereafter
to trial for the same offense. in a civil tribunal deriving its
authority, as did the court-martial, from the same government,
namely, that of the United States? That he will be punished
for the identical offense of which he has been acquitted, if the
judgment of the civil court, now before us, be affirmed, is
beyond question, because, as appears from the record, the
civil court adjudged him guilty and sentenced him to imprison-
ment specifically for "an infraction of Article 404 of said Penal
Code and of the crime of homicide."

It was said by the trial judge that the offense *charged* against
Grafton in the civil court was "assassination," which offense,
he said, was punishable under section 403 of the Philippines
Penal Code by death, and of which crime the military court
could not, under the Articles of War, have taken cognizance;
whereas, the offense for which he was tried by court-martial
was only homicide as defined by section 404 of the Penal
Code. But if not guilty of homicide as defined in the latter
section of the Penal Code—and such was the finding of the
court-martial—he could not, for the same acts and under the
same evidence, be guilty of assassination as defined in the
former section of the Code. Looking at the matter in another
way, the above suggestion by the trial judge could only mean
that simply because, speaking generally, the civil court has
jurisdiction to try an officer or soldier of the Army for the crime
of assassination, it may yet render a ·judgment by which he
could be subjected to punishment for an offense included in
the charge of assassination, although of such lesser offense he
had been previously· acquitted by another court of competent
jurisdiction. This view is wholly inadmissible. Upon this
general point the Supreme Court of the Philippines, referring
to the. defense of former jeopardy, said: "The circumstance
that the civil trial was for murder, a crime of which courts-
martial in time of peace have no jurisdiction, while the prior
military trial was for manslaughter only, does not defeat the

defense on this theory. The identity of the offenses is determined, not by their grade, but by their nature. One crime may be a constituent part of the other. The criterion is, Does the result of the first prosecution negative the facts charged in the second? It is apparent that it does. The acquittal of the defendant of the charge of manslaughter pronounces him guiltless of facts necessary to constitute murder and admits the plea of jeopardy." The offense, homicide or manslaughter, charged against Grafton was the unlawful killing of a named person. The facts which attended that killing would show the degree of such offense, whether assassination of which the civil court might take cognizance if it acquired jurisdiction before the military court acted, or homicide of which the military court could take cognizance if it acted before the civil court did. If tried by the military court for homicide as defined in the Penal Code, and acquitted on that charge, the guaranty of exemption from being twice put in jeopardy of punishment for the same offense would be of no value to the accused, if on a trial for assassination, arising out of the same acts, he could be again punished for the identical offense of which he had been previously acquitted.

In Chitty's Criminal Law, vol. 1, pp. 452, 455, 462, the author says: "It is not in all cases necessary that the two charges should be precisely the same in point of degree, for it is sufficient, if an acquittal of the one would show that the defendant could not have been guilty of the other. Thus a general acquittal of murder is a discharge upon an indictment for manslaughter upon the same person, because the latter charge was included in the former, and if it had so appeared on the trial the defendant might have been convicted of the inferior offense; and, on the other hand, an acquittal of manslaughter will preclude a future prosecution for murder, for if he were innocent of the modified crime he could not be guilty of the same fact, with the addition of malice and design." Mr. Bishop, in his treatise on Criminal Law (7th ed.), § 1050, says: "It is not necessary to establish the defense '*autrefois acquit*' or 'con-

vict' that the offense in each indictment should be the same
in name. If the transaction is the same, or if each rests upon
the same facts between the same parties, it is sufficient to make
good the defense." In *Commonwealth* v. *Roby*, 12 Pick. 503,
the court said: "Thus an acquittal on an indictment for mur-
der will be a good bar to an indictment for manslaughter, and,
*e converso*, an acquittal on an indictment for manslaughter
will be a bar to a prosecution for murder; for in the first instance,
had the defendant been guilty, not of murder but of man-
slaughter, he would have been found guilty of the latter offense
upon that indictment; and in the second instance, since the
defendant is not guilty of manslaughter, he cannot be guilty
of manslaughter under circumstances of aggravation which
enlarge it into murder. 1 Stark. Cr. Pl. (3d ed.) 322."

It must, then, be taken on the present record that an af-
firmance of the judgment of the civil court will subject the
accused to punishment for the same acts, constituting the
same offense as that of which he had been previously acquitted
by a military court having complete jurisdiction to try and
punish him for such offense. It is attempted to meet this view
by the suggestion that Grafton committed two distinct offenses
—one against military law and discipline, the other against
the civil law which may prescribe the punishment for crimes
against organized society by whomsoever those crimes are
committed—and that a trial for either offense, whatever its
result, whether acquittal or conviction, and even if the first
trial was in a court of competent jurisdiction, is no bar to a
trial in another court of the same government for the other
offense. We cannot assent to this view. It is, we think,
inconsistent with the principle, already announced, that a
general court-martial has, under existing statutes, in time of
peace, jurisdiction to try an officer or soldier of the Army
for any offense, not capital, which the civil law declares to be
a crime against the public. The express prohibition of double
jeopardy for the same offense means that wherever such
prohibition is applicable, either by operation of the Constitu-

tion or by action of Congress, no person shall be twice put in jeopardy of life or limb for the same offense. Consequently, a civil court proceeding under the authority of the United States cannot withhold from an officer or soldier of the Army the full benefit of that guaranty, after he has been once tried in a military court of competent jurisdiction. Congress, by express constitutional provision, has the power to prescribe rules for the government and regulation of the Army, but those rules must be interpreted in connection with the prohibition against a man's being put twice in jeopardy for the same offense. The former provision must not be so interpreted as to nullify the latter. If, therefore, a person be tried for an offense in a tribunal deriving its jurisdiction and authority from the United States and is acquitted or convicted, he cannot again be tried for the same offense in another tribunal deriving its jurisdiction and authority from the United States. A different interpretation finds no sanction in the Articles of War; for the 102d Article of War (which is the same as Article 87, adopted in 1806, 2 Stat. 369) declares that "no person"—referring, we take it, to persons in the Army—"shall be tried a second time for the same offense." But we rest our decision of this question upon the broad ground that the same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government. Congress has chosen, in its discretion, to confer upon general courts-martial authority to try an officer or soldier for any crime, not capital, committed by him in the territory in which he is serving. When that was done the judgment of such military court was placed upon the same level as the judgments of other tribunals when the inquiry arises whether an accused was, in virtue of that judgment, put in jeopardy of life or limb. Any possible conflict in these matters, between civil and military courts, can be obviated either by withholding from courts-martial all

authority to try officers or soldiers for crimes prescribed by the civil power, leaving the civil tribunals to try such offenses, or by investing courts-martial with exclusive jurisdiction to try such officers and soldiers for all crimes, not capital.

In support of the view that the judgment of a military court against an officer or soldier of the Army for acts constituting a crime against both the civil law and the military organization, is no bar to a second trial in the civil courts for the same acts, we are referred to *Fox* v. *Ohio*, 5 How. 410, 435; *United States* v. *Marigold*, 9 How. 560, and *Moore* v. *State of Illinois*, 14 How. 13, 19, 20. Nothing said or determined in either of those cases conflicts with the decision in this case. In the above cases, especially in *Moore's case*, the question was mooted whether the same acts could be treated as crimes both against the United States and a State. It was there suggested that a person could not be punished by two governments on account of or for the same act constituting crime, without violating the Fifth Amendment. But this court, speaking by Mr. Justice Grier, said: "An offense, in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace, in consequence of the same act; and may be said, in common parlance, to be twice punished for the same offense. Every citizen of the United States is also a citizen of a State or Territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both. Thus, an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offense against the United States, for which the perpetrator is liable to punishment; and the same act may be also a gross breach of the peace of the State, a riot, assault, or a murder, and subject the same person to a punishment, under the state laws, for a misdemeanor or felony. That either or both may (if they see fit) punish such an offender, cannot be doubted.

Yet it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other; consequently, this court has decided, in the case of *Fox* v. *The State of Ohio*, 5 How. 432, that a State may punish the offense of uttering or passing false coin, as a cheat or fraud practiced on its citizens; and, in the case of the *United States* v. *Marigold*, 9 How. 560, that Congress, in the proper exercise of its authority, may punish the same act as an offense against the United States."

It is clear that the cases above cited are not in point here. The Government of the United States and the governments of the several States in the exercise of their respective powers move on different lines. The Government of the United States has no power, except such as expressly or by necessary implication has been granted to it, while the several States may exert such powers as are not inconsistent with the Constitution of the United States nor with a republican form of government and which have not been surrendered by them to the General Government. An offense against the United States can only be punished under its authority and in the tribunals created by its laws; whereas, an offense against a State can be punished only by its authority and in its tribunals. The same act, as held in *Moore's case*, may constitute two offenses, one against the United States and the other against a State. But these things cannot be predicated of the relations between the United States and the Philippines. The Government of a State does not derive its powers from the United States, while the Government of the Philippines owes its existence wholly to the United States, and its judicial tribunals exert all their powers by authority of the United States. The jurisdiction and authority of the United States over that territory and its inhabitants, for all legitimate purposes of government, is paramount. So that the cases holding that the same acts committed in a State of the Union may constitute an offense

against the United States and also a distinct offense against the State, do not apply here, where the two tribunals that tried the accused exert all their powers under and by authority of the same government—that of the United States.

It may be difficult at times to determine whether the offense for which an officer or soldier is being tried is, in every substantial respect, the same offense for which he had been previously tried. We will not therefore attempt to formulate any rule by which every conceivable case must be solved. But passing by all other questions discussed by counsel or which might arise on the record, and restricting our decision to the above question of double jeopardy, we adjudge that, consistently with the above act of 1902 and for the reasons stated, the plaintiff in error, a soldier in the Army, having been acquitted of the crime of homicide, alleged to have been committed by him in the Philippines, by a military court of competent jurisdiction, proceeding under the authority of the United States, could not be subsequently tried for the same offense in a civil court exercising authority in that Territory. This is sufficient to dispose of the present case.

The judgment must be reversed, and the case remanded with directions to the Supreme Court of the Philippines to order the complaint or information in the Court of First Instance to be dismissed and the plaintiff discharged from custody.

*It is so ordered.*