OPINION OF THE COURT
Carolyn E. Demarest, J.
The instant CPLR article 78 proceeding challenges the direction of the respondent Board of Examiners, Sex Offender Registry of the State of New York (Board) to petitioner, formerly a *393 member of the United States Armed Forces serving in Germany, to register as a sex offender pursuant to Correction Law article 6-C. Petitioner contends that the determination at summary court-martial that he had committed “Indecent Assault” and “Sodomy by Force Without Consent,” resulting in forfeiture of two thirds of a month’s base pay, 15 days’ confinement and an “Other Than Honorable Discharge,” did not constitute a “conviction” under Correction Law § 168-a and that he, therefore, is not a “sex offender” required to register under the Sex Offender Registration Act (Act). The Attorney General of the State of New York, charged by law to defend the actions of the Board, does not dispute petitioner’s contentions and consents to the entry of an order granting the petition and vacating the decision of the Board upon a finding that petitioner is not within the terms of the statute.
Facts of the Case
On May 18, 2001, an 18-year-old German national complained that she had been raped by “approximately” four American military personnel in an apartment within the Marshall Housing Area in Giessen, Germany, where Private Cecil Co-ram was stationed. The allegations were thoroughly investigated by Army investigators in conjunction with local German police. Although Private Coram was not identified by the complainant in a lineup, and medical examination and forensic evidence from the scene failed to corroborate the allegations against him, Private Coram gave a statement admitting to having engaged in consensual oral sodomy and sexual intercourse with complainant. It is noted that, within 12 hours of the initial report, military authorities had learned that the complainant had previously made a false report of attempted rape against American military personnel and had been admitted to a mental hospital two weeks earlier suffering from an “emotional unstable personality disorder” and had been classified with a mental deficiency handicap level of 80%. It is perhaps these factors which prompted the German authorities not to prosecute and prompted the Army to offer petitioner a summary court-martial on what would appear to be very serious charges. (See generally, The Art of Trial Advocacy, The Army Lawyer, Dept of Army Pamph 27-50-354, at 52 [July 2002], which describes the criteria by which commanding officers determine when to elect to try by summary courts-martial.)
Initially, the accused soldiers were held by German civilian authorities pending a decision regarding formal prosecution in *394 a German court, but were temporarily released to Army investigators for interrogation only. At 15:35 on May 18, 2001, Cecil Coram signed a written waiver of rights generally corresponding to Miranda warnings. At 17:30 the same day, he wrote out a statement in which he acknowledged that, together with five other soldiers, he had accompanied the complainant to the apartment with the intention of engaging in sexual activities. He contended that the oral sodomy was completely consensual on complainant’s part, but admitted that she had said “nein” after “a couple of minutes.” Private Coram stated that he did not “take seriously” complainant’s verbal resistance to vaginal intercourse, but did leave the room when she pushed him away. A sworn oral interview was conducted by Army Investigator Briant thereafter.[1]
On May 22, 2001, Private Coram was accused of wrongful use of marijuana on March 14, 2001, based upon urinalysis and other evidence. Though he exercised his right not to make a statement in that case, the charge was sustained in a nonjudicial article 15 proceeding and Private Coram was reduced in rank, given 45 days’ extra duty and “restricted” for 45 days, effective July 4, 2001.
On November 28, 2001, Private Coram was tried by summary court-martial and convicted of indecent assault and sodomy by force without consent and was required to forfeit two thirds of his base pay for one month, sentenced to 15 days’ confinement and given an “Other Than Honorable Discharge.” On December 3, 2001, upon his release from the Army, Cecil Coram signed an acknowledgment that he had been informed that he would be required to register as a sex offender in the state in which he was to reside and may be subject to criminal prosecution upon failure to do so. Notice of Private Coram’s conviction of a sex offense was provided to the New York State Board of Examiners of Sex Offenders by the Department of Defense pursuant to 10 USC § 951. Following the Board’s determination that Private Coram was required to register, he was sent notice to appear before this court pursuant to Correction Law § 168-k (2) for a determination as to his level of risk. Mr. Coram was assigned counsel, with whom he appeared on May 20, 2002. At that appearance, counsel took issue with the Board’s determination that Mr. Coram was a sex offender within the meaning of the statute. The risk assessment hearing was then adjourned to afford Mr. Coram the opportunity to *395 bring this article 78 proceeding to annul and vacate the determination of the Board. (See, Matter of Mandel, 293 AD2d 750 [2d Dept 2002].)
Discussion of Law
It is not disputed that petitioner Coram was tried upon the sex offenses at issue by summary court-martial. The constitution and jurisdiction of such military forum is described in the Uniform Code of Military Justice (UCMJ) (10 USC §§ 816-821). As distinguished from general or special courts-martial, both of which consist of judges with legal training, a prosecutor and a defense attorney, a summary court-martial is conducted by a single commissioned officer who acts as judge, prosecutor and defense counsel insofar as such commissioned officer has the authority to call witnesses at the request of the accused. The accused has the absolute right to reject trial by summary court-martial, in which case a general or special court-martial will be convened. (See UCMJ art 20 [10 USC § 820].) Although a summary court-martial has jurisdiction to try an Army private for any “noncapital offense,” the punishment that may be imposed is limited and may not include “death, dismissal, dishonorable or bad-conduct discharge, confinement for more than one month, hard labor without confinement for more than 45 days, restriction to specified limits for more than two months, or forfeiture of more than two-thirds of one month’s pay.” (UCMJ art 20 [10 USC § 820].) Given these limitations, it is understandable that an individual would accept the tribunal of one rather than risk more severe punishment before a general or special court-martial. (See The Art of Trial Advocacy, supra at 55, in which it is suggested that more serious offenses may be tried by summary courts-martial following a pretrial agreement by the accused to consent to a follow-up administrative separation proceeding which would result in separation from service or a waiver which would include an Other Than Honorable Discharge.)[2]
Defense counsel has premised his argument that the findings of a summary court-martial do not constitute a “conviction” for purposes of the Act, at least partially, on the limitations on punishment and the lack of criminal due process. Defense counsel, a gentleman well-versed in military law, asserts that the summary courts-martial procedure is an *396 “informal” administrative proceeding designed to address minor transgressions of military regulations. Upon the authority of Middendorf v Henry (425 US 25 [1976]), petitioner asserts that a finding against an accused in a summary court-martial can never be treated as a “conviction” for civilian purposes.
In Middendorf, enlisted members of the Marine Corps, charged with “unauthorized absences” and assault, challenged the authority of the military to try them at summary courts-martial without providing counsel. All of the accused had been expressly apprised of their right to refuse to proceed without counsel and had consented in writing to the summary courts-martial. Explaining the structure of discipline under the Uniform Code of Military Justice, the Court noted four methods: the general and special courts-martial, similar to civilian judicial proceedings, which have the authority to award “any lawful sentence” including death, bad conduct discharge, six months’ confinement at hard labor, forfeiture of two-thirds pay for six months and reduction in grade; an administrative article 15 proceeding conducted personally by the accused’s commanding officer for “minor offenses”; and the summary court-martial, somewhere between the informal article 15 procedure and the “courtroom-type” procedure of the general and special courts-martial, designed to provide prompt justice for minor offenses. (See Middendorf v Henry, supra, 425 US at 31-33.)
Rejecting the argument that plaintiff military personnel were entitled to counsel under the Fifth and Sixth Amendments of the United States Constitution, the Supreme Court held “the summary court-martial provided for [there] * * * was not a "criminal prosecution’ within the meaning of [the Sixth] Amendment” (425 US at 34). Analogizing the summary court-martial to a civilian parole or probation hearing, the Supreme Court more broadly and unequivocally reiterated that a military summary court-martial is not a “criminal prosecution” (425 US at 42); however, contrary to petitioner Coram’s argument, the Court did characterize the findings against the plaintiffs as “convictions” (425 US at 38-39, 43; see also, United States v Kuehl, 11 MJ 126, 127 n 2 [CMA 1981]). Moreover, it is clear from the Court’s decision in Middendorf that, while the summary court-martial is meant “to exercise justice promptly for relatively minor offenses under a simple form of procedure * * * thoroughly and impartially inquiring] into both sides of the matter [to] assure that the interests of both the Govern *397 ment and the accused are safeguarded” (425 US at 41, quoting Manual for Courts-Martial 79a [1969]), and while not an “adversary” proceeding, the summary court-martial is not the same as the article 15 purely administrative determination by the accused’s own commanding officer and accuser.
The Attorney General has not contested petitioner’s claim that Middendorf precludes requiring petitioner to register as a sex offender because he was not afforded counsel, was adjudicated in an informal summary proceeding and was not “convicted” within the meaning of Correction Law § 168-a (2) which defines “sex offense.” This court does not agree with the interpretation accorded that decision by the petitioner and concurred in by respondent. As I read the majority opinion in Middendorf, petitioner’s conclusion is inconsistent with the reasoning expressed therein. The Supreme Court, in reversing the Circuit Court, concluded, upon the authority of congressional intent as expressed in the Uniform Code of Military Justice, that there is no right to counsel in summary courts-martial but that military necessity and the option afforded the accused to demand counsel and elect a more formal judicial procedure in the general or special courts-martial satisfied due process under the Constitution. The validity of a summary court-martial conviction is in no way impeached by the alleged procedural imperfections.
Analogizing to the constitutionally approved procedure by which a civilian accused may waive trial and plead guilty in consideration of a lesser penalty, the Supreme Court found that the accused serviceman’s election not to demand the more formal adjudicatory procedure available to him, in which he would be afforded counsel, to be a rational and binding decision (425 US at 46-48). The resulting “conviction” would therefore be an adjudication on the merits. This court is aware that some military authorities have made a distinction between a “conviction” by summary courts-martial and a “conviction” by special or general courts-martial, finding only the latter comparable to a “federal conviction.” (See, e.g., United States v Rogers, 17 MJ 990 [AMCR 1984]; United States v Kuehl, supra, 11 MJ at 127 n 2.) Such authority is not, however, dispositive in all civilian contexts, as noted in the dissenting opinion of Justice Marshall in Middendorf (425 US at 58-59). Moreover, in light of the well-settled principle that the sex offender registration procedure is regulatory rather than criminal in nature, intended to protect the community rather than penalize the accused (People v Stevens, 91 NY2d 270 *398 [1998]; People v Mitchell, 300 AD2d 377 [2d Dept 2002]; People v Clark, 261 AD2d 97 [3d Dept 2000]), and particularly in light of the legislative history of both the state and federal statutes, this court believes the subject conviction at summary court-martial falls within the purview of the Act. Thus, although what follows will make clear that petitioner Coram need not register under the Act, this court cannot endorse the suggestion of both petitioner and respondent that a conviction pursuant to summary court-martial can never be the predicate for the obligation to register under the Act in New York.
Effective March 11, 2002, Correction Law article 6-C was amended in order to bring New York’s Sex Offender Registration Act into compliance with applicable federal statutes and secure federal funding. (See Governor’s Mem approving L 2002, ch 11, 2002 NY Legis Ann, at 6.) Specifically, subdivision (2) (d) of section 168-a was added to provide that a foreign conviction to any offense which includes all the essential elements of a crime listed in Correction Law § 168-a (2) (a) is a “sex offense” requiring registration in New York. The prior restriction limiting covered convictions from jurisdictions other than New York to those in which a sentence of death or imprisonment for a term in excess of one year is authorized under the law of that foreign jurisdiction was deleted. (L 2002, ch 11, § 1.) Among the offenses listed in section 168-a (2) (a) are sexual misconduct (Penal Law § 130.20), sodomy in the third degree (Penal Law § 130.40) and sodomy in the first degree (Penal Law § 130.50 [1]) by forcible compulsion, each of which would appear to have been established by petitioner’s conviction to “Sodomy by Force Without Consent.”[3] It would appear, therefore, that, at least arguably, petitioner has been convicted of a sex offense within the terms of the present amended statute.
Moreover, given the express intent of the amendments to comply with federal requirements, it is also appropriate to consider the federal statutes in assessing whether petitioner’s conviction by summary court-martial is intended to fall within the statutory definition of “sex offense” under the New York Act, assuming all other conditions have been met.
In his Memorandum approving chapter 11 of the Laws of 2002, Governor Pataki cited the federal statute reported at 42 *399 USC § 14071 (b) (7) as requiring many of the amendments contained in the bill. (See Governor’s Mem, 2002 NY Legis Ann, at 6, 7.) That section expressly mandates registration “upon release” of “persons sentenced by courts martial”: “each State * * * shall ensure that procedures are in place to accept registration information from (A) residents who were convicted in another State, convicted of a Federal offense, or sentenced by a court martial” (emphasis added). There is no distinction made between the various types of court-martial proceedings. The “notice of release” provided by the Department of Defense to New York’s Board of Examiners of Sex Offenders and the signed “prisoner’s acknowledgment of sex offender registration requirements” obtained from petitioner prior to his release from the “US Army Confinement Facility — Europe” was in strict compliance with the mandate of the Violent Crime Control and Law Enforcement Act of 1994 (42 USC § 14071 [b] [1], [4]), and as required by the UCMJ (10 USC § 951, as amended by Pub L 105-119, tit I, § 115 [a] [8] [C], 111 US Stat 2466, eff Nov. 26, 1998). It is absolutely clear from the expressed congressional intent, adopted by the New York State Legislature in amending its own Act, that persons convicted by courts-martial fall within the purview of the Act. There is no merit to petitioner’s contentions regarding the impropriety of requiring him to register based upon a military adjudication of the charges by summary court-martial.
In Matter of Booth v Clary (83 NY2d 675 [1994]), petitioners contended that their convictions by general courts-martial precluded subsequent state prosecution for the same offense pursuant to New York’s double jeopardy protections. The Court of Appeals rejected the prosecutor’s argument that the military tribunal was not a “court” and that the proceeding was not a “trial,” concluding that courts-martial are “courts” within the meaning of those statutes barring double jeopardy. The Court also cited its own prior decisions upholding the use of such adjudications as predicate convictions for the purpose of sentencing (id. at 679, citing People v Benjamin, 22 NY2d 723 [1968]), and the United States Supreme Court decision in Grafton v United States (206 US 333 [1907]), in which a general court-martial was recognized as a “prior prosecution” for double jeopardy purposes, noting: “The fact that the prior criminal complaint there arose out of a violation and prosecution under military law, instead of common law or statutory penal prohibition, did not render the military prosecution any less a judicial exercise under the sovereign power of the United *400 States” (Matter of Booth v Clary, supra, 83 NY2d at 680). Such reasoning seems equally applicable to the case at bar. (See also, Matter of Northrup v Relin, 197 AD2d 228 [4th Dept 1994].)
In People v Williams (78 AD2d 643 [2d Dept 1980]), the constitutional viability of a conviction by court-martial was expressly sustained for use in civilian proceedings despite the “deficiencies” in process alleged by petitioner. And, in People v Natkie (2002 WL 1897937, 2002 Mich App LEXIS 2327 [2002]), the Michigan appellate court found that a conviction by military court-martial of rape and indecent assault was not susceptible to collateral challenge on constitutional grounds because the UCMJ provides the same constitutional protections afforded the accused under federal and state law.
Given the legislative history of the recent amendments to New York’s Sex Offender Registration Act and the cited case law in which the validity of a court-martial conviction has been upheld for use in civilian proceedings as res judicata, there can be no doubt that petitioner’s conviction by summary court-martial to indecent assault and sodomy by force without consent is a “sex offense” within the present statute requiring him to register as a sex offender as directed. The Attorney General, appearing on behalf of respondent Board, mysteriously declined to so argue, but insisted that, although incorrect, the Board’s notice to petitioner could not be withdrawn, indicating “respondent does not oppose petitioner’s application” (letter to Court from Assistant Attorney General Rebecca Ann Durden, Oct. 25, 2002). This court does not agree with the legal interpretation of the Attorney General and declines to simply enter an order which would, by implication, endorse what is perceived to be an erroneous position and would potentially carry precedential value.
However, petitioner’s conviction took place on November 28, 2001, and he was released from the military, having satisfied the conditions of his sentence, on December 3, 2001, at least three months prior to the effective date of the amendment. Prior to the amendment of the statute, Correction Law § 168-a (2) (b) provided that “sex offense” included a foreign conviction to an offense contained in paragraph (2) (a) “for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized in that jurisdiction irrespective of whether such sentence was imposed.” (L 1999, ch 453, § 1.) Although this language was deleted from the amended statute (L 2002, ch 11, § 1), in light of the previously-discussed *401 limitations on the punishment available through the summary court-martial, clearly this statutory requirement, effective on the date of petitioner’s offense and the date of his conviction, was not met in this case. The new statutory definition is expressly made prospectively applicable. (L 2002, ch 11, § 24.) While the new statute provides that some of the amended provisions of subdivision (2) (d) of Correction Law § 168-a would be retroactive as to those persons who had not completed the sentence imposed on the effective date of the new statute (L 2002, ch 11, § 24), that provision does not appear to relate to the amendment at issue here and, in any event, petitioner had completed his sentence on the effective date.
Conclusion
Accordingly, although this court finds that petitioner’s conviction by summary court-martial to offenses that include all essential elements of some of the crimes specified in Correction Law § 168-a (2) (a) renders him a sex offender required to register under the newly-amended statute, petitioner is not subject to the terms of the amended statute because his convictions predate the effective date of the Act. The petition, in the nature of mandamus to review, to vacate and annul the determination of the Board directing petitioner to register as a sex offender, is granted based upon the Board’s error of law as applied to this petitioner. (See CPLR 7803 [3]; New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194 [1994].)

. The facts recited herein have been gleaned from extensive military records supplied to the court primarily by petitioner.

. While the record does not disclose that such a pretrial agreement was made in this case, it would appear to be a possible explanation for petitioner’s other than honorable discharge following the summary court-martial.

. It is not necessary to the decision in this case to determine whether the “essential elements” of the crimes of which petitioner stands convicted (indecent assault and sodomy by force without consent) correspond to those elements of the crimes specified in Correction Law § 168-a (2) (a), however, the corelation is clear. (See Matter of Booth v Clary, 83 NY2d 675 [1994]; 10 USC § 920 [a]; § 925.)