Justice KENNEDY,
concurring in the judgment.
The amendment to the Indian Civil Rights Act of 1968 (ICRA) enacted after the Court’s decision in Duro v. Reina, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), demonstrates Congress’ clear intention to restore to the tribes an inherent sovereign power to prosecute nonmember Indians. Congress was careful to rely on the theory of inherent sovereignty, and not on a delegation. Justice SOUTER’s position that it was a delegation nonetheless, post, at 1651 (dissenting opinion), is by no means without support, but I would take Congress at its word. Under that view, the first prosecution of Lara was not a delegated federal prosecution, and his dou *1640 ble jeopardy argument must fail. That is all we need say to resolve this ease.
The Court’s analysis goes beyond this narrower rationale and culminates in a surprising holding: “For these reasons, we hold ... that the Constitution authorizes Congress to permit tribes, as an exercise of their inherent tribal authority, to prosecute nonmember Indians.” Ante, at 1639. The Court’s holding is on a point of major significance to our understanding and interpretation of the Constitution; and, in my respectful view, it is most doubtful.
Were we called upon to decide whether Congress has this power, it would be a difficult question. Our decision in United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), which the Court cites today but discusses very little, is replete with references to the inherent authority of the tribe over its own members. As I read that case, it is the historic possession of inherent power over “the relations among members of a |2iatribe” that is the whole justification for the limited tribal sovereignty the Court there recognized. Id., at 326, 98 S.Ct. 1079. It is a most troubling proposition to say that Congress can relax the restrictions on inherent tribal sovereignty in a way that extends that sovereignty beyond those historical limits. Cf., e.g., Strate v. A-1 Contractors, 520 U.S. 438, 445-446, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (“In the main ... ‘the inherent sovereign powers of an Indian tribe’—those powers a tribe enjoys apart from express provision by treaty or statute—‘do not extend to the activities of nonmembers of the tribe’ ” (quoting Montana v. United States, 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981))). To conclude that a tribe’s inherent sovereignty allows it to exercise jurisdiction over a nonmember in a criminal case is to enlarge the “unique and limited character” of the inherent sovereignty that Wheeler recognized. 435 U.S., at 323, 98 S.Ct. 1079.
Lara, after all, is a citizen of the United States. To hold that Congress can subject him, within our domestic borders, to a sovereignty outside the basic structure of the Constitution is a serious step. The Constitution is based on a theory of original, and continuing, consent of the governed. Their consent depends on the understanding that the Constitution has established the federal structure, which grants the citizen the protection of two governments, the Nation and the State. Each sovereign must respect the proper sphere of the other, for the citizen has rights and duties as to both. See U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 838-839, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (KENNEDY, J„ concurring). Here, contrary to this design, the National Government seeks to subject a citizen to the criminal jurisdiction of a third entity to be tried for conduct occurring wholly within the territorial borders of the Nation and one of the States. This is unprecedented. There is a historical exception for Indian tribes, but only to the limited extent that a member of a tribe consents to be subjected to the jurisdiction of his own tribe. See Duro, supra, at 693, 110 S.Ct. 2053. The majority today reaches beyond that limited exception.
Lip,The Court resolves, or perhaps avoids, the basic question of the power of the Government to yield authority inside the domestic borders over citizens to a third sovereign by using the euphemistic formulation that in amending the ICRA Congress merely relaxed restrictions on the tribes. See ante, at 1631, 1633, 1634, 1636, and 1637. There is no language in the statute, Or the legislative history, that justifies this unusual phrase, cf. 25 U.S.C. *1641 § 1301(2) (referring to “the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians”); and, in my respectful view, it obscures what is actually at stake in this case. The terms of the statute are best understood as a grant or cession from Congress to the tribes, and it should not be doubted that what Congress has attempted to do is subject American citizens to the authority of an extraconstitutional sovereign to which they had not previously been subject. The relaxing-restrictions formulation is further belied by the involvement of the United States in all aspects of the tribal prosecution of a nonmember Indian. Federal law defines the separate tribes, § 1301, the broader class of “Indians,” the maximum penalty which the tribes may impose for crimes, and the procedural protections to which defendants are entitled in the trials, § 1302. This does not indicate the sort of detachment from the exercise of prosecutorial authority implicit in the description of Congress’ Act as having relaxed restrictions.
In addition to trying to evade the important structural question by relying on the verbal formula of relaxation, the Court also tries to bolster its position by noting that due process and equal protection claims are still reserved. Ante, at 1639. That is -true, but it ignores the elementary principle that the constitutional structure was in place before the Fifth and Fourteenth Amendments were adopted. To demean the constitutional structure and the consent upon which it rests by implying they are wholly dependent for them vindication on the Due Process and Equal Protection |214Clauses is a further, unreasoned holding of serious import. The political freedom guaranteed to citizens by the federal structure is a liberty both distinct from and every bit as important as those freedoms guaranteed by the Bill of Rights. Cf. Clinton v. City of New York, 524 U.S. 417, 449-453, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (KENNEDY, J., concurring). The individual citizen has an enforceable right to those structural guarantees of liberty, a right which the majority ignores. Perhaps the Court's holding could be justified by an argument that by enrolling in one tribe Lara consented to the criminal jurisdiction of other tribes, but the Court does not mention the point. And, in all events, we should be cautious about adopting that fiction.
The present case, however, does not require us to address these difficult questions of constitutional dimension. Congress made it clear that its intent was to recognize and affirm tribal authority to try Indian nonmembers as inherent in tribal status. The proper occasion to test the legitimacy of the Tribe’s authority, that is, whether Congress had the power to do what it sought to do, was in the first, tribal proceeding. There, however, Lara made no objection to the Tribe's authority to try him. In the second, federal proceeding, because the express rationale for the Tribe’s authority to try Lara—whether legitimate or not—was inherent sovereignty, not delegated federal power, there can be no double jeopardy violation. Cf. Grafton v. United States, 206 U.S. 333, 345, 27 S.Ct. 749, 51 L.Ed. 1084 (1907) (“[Bjefore a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged”). For that reason, I concur in the judgment.