## In re DI BARTOLO.

District Court, S. D. New York.

Aug. 17, 1943.

930

Simon J. Liebowitz, of New York City, for relator.

Howard F. Corcoran and Samuel Brodsky, both of New York City, and Archibald King, J. A. G. D. U. S. Army, of Washington, D. C., for respondent.

RIFKIND, District Judge.

A writ of habeas corpus was sued out on behalf of Anthony Arthur di Bartolo, to inquire into the cause of his detention by the commanding officer of the military prison located on Governors Island, New York. For convenience I shall refer to di Bartolo as the petitioner. The return was made by Col. Thomas L. Crystal, commanding officer of the United States Army, Fort Jay, Governors Island, New York, who averred that he held, the petitioner in custody at Fort Jay by virtue of a sentence of imprisonment pronounced by a general court-martial.

Upon the argument on the return to the writ the court inquired of petitioner's attorney whether he claimed that any issues of fact required trial. The attorney answered that he needed time to consider the matter and he was granted five days. Thereupon, petitioner filed a paper in the form of a verified answer, containing denials of certain averments of the return and affirmative allegations. Further oral argument was then had in the course of which petitioner's attorney made a number of concessions. For reasons which appear in the discussion which follows I find that no triable issue of fact remains and that the undisputed facts afford an adequate basis for decision.

The petitioner, a civilian employee of Douglas Aircraft Company, Inc. was charged, on August 13, 1942, by an officer of the United States Army Corps of Military Police, with the theft of a diamond ring having a value of $300. It was charged that the offense occurred on August 10, 1942 at Asmara, Eritrea, in violation of Article of War 93, 10 U.S.C.A. § 1565. He was tried by a general court-martial in Eritrea and convicted on October 16, 1942. The application of military law to the petitioner was founded on Article of War 2, 10 U.S.C.A. § 1473(d), in that he was a person "accompanying or serving with the Armies of the United States in the field". Since the case turns on whether he was such a person it is necessary to state in some detail the circumstances of petitioner's presence in Eritrea at the time of the offense and his subsequent trial by military law.

On May 5, 1942, petitioner entered into a contract of employment with Douglas Aircraft Company, Inc. Pursuant to that contract he was employed as a mechanic in connection with the organization, equipment and operation of an aircraft depot at Gura (about 30 miles from Asmara), Eritrea. The employment contract recited that Douglas Aircraft Company, Inc., had theretofore entered into a contract with the United States for the organization, equipping and operation of an aircraft depot at Gura and that the petitioner was hired pursuant to that contract with the United States. The Douglas-United States contract provided that compensation to Douglas was to be determined by a cost-plus-fixed-fee formula.

The employment contract provided further that petitioner would probably be required to work in a war combat zone in a foreign country. Compensation in the event of capture and detention by the enemy was specified. The term of employment was to commence not later than July 1, 1942 and to continue until December 31, 1942, or such later date as might be agreed upon, and thereafter until sixty days after return transportation to the United States was made available by the employer. The petitioner reached Gura on or about July

23, 1942 and was there engaged as a mechanic on war planes.

The affidavit of Major General Russell L. Maxwell is annexed to the return. During the period here under observation he was commanding general of the United States Army Forces in the Middle East. He states that during a period which includes August 1 to October 30, 1942, forces under his command were in occupation of the Italian colony of Eritrea; that Eritrea was in a "theatre of operations" of the United States Army; that the Gura air depot was operated by Douglas "under the supervision and control of officers of the United States Army"; that prior to the entry of American forces into Eritrea it had been entered by British forces and a military government had been there established by the commanding general of the armed forces of the United Kingdom.

His affidavit also discloses that during a period which includes August 1 to October 30, 1942, American and British forces were both in Eritrea, former enemy territory, as co-belligerents. The military government established by the British forces permitted local courts to function but only with respect to inhabitants of Eritrea, in causes which had no political significance and which would not affect the security or interests of the United Nations. The judgments of the local tribunals were subject to the approval, revision or rejection of the British Military Administrator. Military courts were likewise established by the British Military Administration. The commanding general of the United States Forces did not establish any military government in this theatre of operation. However, pursuant to understanding between the British and United States commanding officers, the British Military Administrator exempted all persons subject to the military law of the United States from the jurisdiction of the courts established or reconstituted by the British military government. During the period under review there were no courts possessed of jurisdiction to punish a person situated like the petitioner for criminal offenses committed by him unless such jurisdiction be found in the courts-martial appointed by the commanding general of the United States Forces in the area.

Lt. Col. Goff's affidavit, annexed to the return, recites that he is in the Judge Advocate General's Department of the Army of the United States and that he served at Gura from July 3, 1942 to August 12, 1942 and on that date he became Staff Judge Advocate of the Eritrea Service Command with headquarters at Asmara. He declares that at Gura 100 United States army officers and men were stationed; that none but military aircraft was assembled and repaired at Gura; that both British and American military airplanes were included; that the Gura base was exclusively a military installation and that 1500 civilian employees were then engaged at Gura.

The petitioner takes issue with the allegation of the return that he was employed at Gura through October 16, 1942, the time of his sentence. He asserts by his affidavit that his employment continued only to August 8, 1942, a date preceding the time of the offense. Upon the argument, however, his attorney admitted that on August 8th petitioner suffered a slight injury by reason of which he was relieved of active duty but that his employment was not then terminated. On behalf of petitioner it was further urged and admitted that he was paid by Douglas through August 15th. I call it an admission because it was basis for an inference that the employment relation was in existence at the time the offense was committed. Petitioner, however, seeks to erect upon it an argument that his employment terminated before the military trial and that the military, therefore, lost jurisdiction by virtue of the doctrine that a person separated from the military service ceases to be amenable to military law. Ex parte Wilson, D.C.E.D.Va.1929, 33 F.2d 214. The argument, however, is without merit. Assuming that by analogy, military jurisdiction would expire when the "accompaniment" ceased, it by no means follows that jurisdiction failed when the employment terminated. The primary issue is whether the petitioner accompanied the Armies of the United States.

Before that issue is reached I may dispose of several subsidiary questions. Clearly, jurisdiction over petitioner cannot be claimed merely on the basis of convenience, necessity, or the non-availability of civil courts. Equally clearly, jurisdiction cannot be derived from the understanding reached between the American and British commanders. Although such an understanding might have afforded the American military the opportunity to exercise jurisdiction which has its legal source elsewhere, it could not confer jurisdiction. Military jurisdiction over the peti-

tioner must rest upon valid Congressional enactments.

Article of War 2, 10 U.S.C.A. § 1473, provides:

"The following persons are subject to these articles * * *

"(d) All retainers to the camp and all persons accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the Armies ·of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles".

Camp retainers and camp followers constitute a very ancient institution. From time immemorial they have included the practitioners of the highest and lowliest professions. Among such followers were those who basked, vicariously, in the glory of the heroism of their soldier masters and those who were moved by more acquisitive instincts. The gallery of the curious has, with modern efficiency, been converted into the corps of war correspondents; the tinker and the smith have been transmuted into the aircraft depots of today.

█ It is in keeping with the traditions of this peace-loving nation that its civil courts should not readily surrender a civilian to the jurisdiction of the military. Expediency and even necessity should not dispense with a painstaking examination to determine whether one whose liberties the civil courts have been charged to guard inviolate has been properly brought to justice in a military tribunal.

█ The statutory foundation for the asserted military jurisdiction over the petitioner is the cited statute and our principal inquiry is whether the petitioner falls within the stipulated categories. The history of the· article throws light upon its meaning. The word "accompanying" which appears in 39 Stat. 650 was absent from the predecessor article from which it was derived, Article of War 63, Revised Statute § 1342. The latter Article read: "All retainers to the camp, and all persons serving with the armies of the United States in the field, though not enlisted soldiers, are to be subject to orders, according to the rules and discipline of war."

The 64th Congress made the change when it enacted the Articles of War of 1916. At the legislative hearings held upon the bill, Major General Crowder, Judge Advocate General, made statements which are incorporated in the transcript of the hearing annexed to the Senate Report, Senate Report No. 130, 64th Congress, First Session.

"Subhead (d) of article 2, which corresponds to article 63 of the existing code, introduces the words 'All persons accompanying', so as to make subject to the article a class of persons who do not fall under the designations, 'retainers to the camp,' and 'persons serving with the armies in the field,' employed in the existing law, and additional words are introduced so as to confer jurisdiction over all three classes of persons, to wit (a) retainers, (b) persons accompanying, and (c) persons serving with the armies of the United States in the field, in time of peace, whenever the Army is serving outside the territorial jurisdiction of the United States. At present jurisdiction is limited to classes (a) and (c) and to a period of war. The purpose is to give full disciplinary authority over these three classes of persons when the army may be in peaceful transit through a foreign country, or where, as in Cuba in 1906, there is intervention in a foreign country falling short of war." (p. 30)

"We now come to subhead (d), and here there is a change in the law which will claim your attention. In the present condition of our Articles of War 'retainers to the camp' (i. e., officers' servants, newspaper correspondents, telegraph operators, etc.), and 'persons serving with the armies in the field' (i. e., civilian clerks, teamsters, laborers, interpreters, guides, contract surgeons, officials, and employees of the provost marshal general's department, officers and men employed on transports, etc.) are made subject to the Articles of War only during the period and pendency of war and while in the theater of military operations. A number of persons who manage to accompany the Army, not in the capacity of retainers or of persons serving therewith, are not included. They constitute a class whose subjection to the Articles of War is quite as necessary as in the case of the two classes expressly mentioned. Accordingly the article has been expanded to include also persons accompanying the Army. The existing articles are further defective in that they do not permit the disciplining of these three classes of camp followers in time of peace in places to which the civil jurisdiction of the United States does not

extend and where it is contrary to international policy to subject such persons to the local jurisdiction, or where, for other reasons, the law of the local jurisdiction is not applicable, thus leaving these classes practically without liability to punishment for their unlawful acts under such circumstances—as, for example, where our forces accompanied by such camp followers are permitted peaceful transit through Canadian, Mexican, or other foreign territory, or where such forces so accompanied are engaged in the nonhostile occupation of foreign territory, as was the case during the intervention of 1906–7 in Cuba." (pp. 37, 38)

These statements which supplied Congress with the reasons for the executive's desire for the change and the objects to be attained thereby are very cogent evidence of the Congressional intent in adopting these recommendations. It is manifest, therefore, that Congress deliberately intended to subject to military authority, in the circumstances specified, not only camp retainers and not only those who serve with the army but others who accompany it. Such persons must include those who are not employees of the army. It follows that the circumstance that petitioner was not in the employ of the army does not defeat the jurisdiction of the military, if otherwise attaching.

The conditions for the attachment of such jurisdiction which are relevant to the present situation are: at all times: persons accompanying the Armies of the United States without the territorial jurisdiction of the United States; in time of war: persons accompanying the Armies of the United States in the field both within and without the territorial jurisdiction of the United States.

█ █ Since the events material here occurred outside the territorial jurisdiction of the United States it is not really necessary to determine whether the armies were in the field although it is too clear for argument that such was the fact, that is they were away from the home base and their established location and on an operational, indeed hostile, mission. The court can take judicial notice of such recent history even if proof of this fact were lacking. However, it is explicitly avouched, in the return to the writ, by high officers of the army in respect of a matter so clearly within their exclusive competence that they cannot be lightly challenged, if at all.

█ Was there an accompaniment? We have it as a fact that Gura was a military base. Its existence, maintenance and operation were in the hands of the military. Its activities were purely military, the repair and servicing of military aircraft actively employed in the waging of war. Petitioner was at that base, not casually, not as a visitor, not by chance. He was there for a purpose, to work as a mechanic upon military aircraft. For that purpose he went to Eritrea, a field of military operations. His presence there under the conditions indicated shows the appropriateness of military jurisdiction since it serves the expressed objectives of the amendments already mentioned. He is a person in a place "to which the civil jurisdiction of the United States does not extend and where it is contrary to international policy to subject such persons to the local jurisdiction". Clearly, the petitioner accompanied the armies of the United States.

The petitioner claims that in fact he never worked on American military aircraft and that all his activity was devoted to British military aircraft. Assuming that to be fact it is quite without force. There is nothing in that fact which detracts from his presence in Gura as constituting an accompaniment of the United States Armies. That the planes of a co-operating co-belligerent should be repaired at an American base is entirely within the province of the military. But it is the armies of the United States not of the United Kingdom whom the petitioner accompanied.

█ I have reached the conclusion that at Gura the petitioner belonged to the class of persons accompanying the armies of the United States within the language of the Second Article of War. The offense of which he was convicted occurred, however, at Asmara, thirty miles from Gura. That, however, does not defeat the military jurisdiction. Asmara was within the same field of operations as Gura—within the same enemy territory occupied by the armies of the United States as a hostile force. Petitioner's identity as a person accompanying the army did not change when he went to "town". Distance alone is not conclusive although distance may at times indicate a separation from the army which the civilian had accompanied. Considering the character of the geography—Gura, a base remote from regular communities with Asmara as its natural center of attraction; the nature of petitioner's visit to Asmara—

it is not contended that his presence at Asmara was the result of a permanent separation from Gura, I conclude that he was still accompanying the army while he was visiting Asmara and that the practical considerations which underlie the congressional purpose in the Second Article of War are as valid at Asmara as at Gura. Hines v. Mikell, 4 Cir., 1919, 259 F. 28, certiorari denied 250 U.S. 645, 39 S.Ct. 494, 63 L.Ed. 1187; Ex parte Jochen, D.C.S.D.Tex.1919, 257 F. 200.

Petitioner relies heavily on Ex parte Weitz, D.C.Mass.1919, 256 F. 58. I think that the principle announced in that case would support jurisdiction by the military in the instant circumstances.

Writ dismissed.