## UNITED STATES ex rel. MARINO v. HILDRETH, Colonel, U. S. Army.

### No. 1007.

District Court, E. D. New York.

July 28, 1945.

James F. Ryan, of Brooklyn, N. Y., for relator.

Miles F. McDonald, U. S. Atty., and Vine H. Smith, both of Brooklyn, N. Y., for respondent.

KENNEDY, District Judge.

Relator applies on behalf of Matthew Marino for a writ of habeas corpus against Col. Edward E. Hildreth, U. S. A., respondent. Pasquale Marino, the relator, is the father of Matthew Marino. The latter is held as a prisoner by the United States at Mitchel Field, Long Island, N. Y. Since he is not technically the relator, I shall refer to the prisoner as "Marino."

Marino enlisted in the United States Army on February 18, 1944. He was stationed at Mitchel Field for a time, and was then transferred to Fort Dix, N. J., where, on January 30, 1945, he was hon-

orably discharged. On May 14, 1945, Marino, while living with his father in Jersey City, was arrested and placed in confinement at the guard house at Mitchel Field, Long Island, N. Y. On July 6, 1945, Marino was served with charges and specifications. He now claims that the Army has no jurisdiction over him, and that he is held illegally in custody, because ever since his discharge from the Army he has not been subject to the rules and regulations of the military authorities.

The return alleges that Marino was inducted on February 18, 1944, into the Army of the United States, and that he is held by the military authorities to answer formal charges against him for violations of the 58th, 94th and 96th Articles of War. The 58th Article of War, 10 U.S.C.A. § 1530, concerns itself with the offense of desertion. The 94th Article of War, 10 U.S.C.A. § 1566, denounces as crimes various types of fraud on the United States. (It will be necessary for me to make a further and more extended reference to this article.) The 96th Article of War, 10 U.S.C.A. § 1568, is a very general grant of jurisdiction to courts-martial over "disorders and neglects to the prejudice of good order and military discipline."

I turn to the charges and specifications. Annexed to the return are two "charge sheets." The first is dated May 18, 1945. It charges Marino with violations of the 58th Article of War and of the 96th Article of War. The specification under the first charge is that Marino deserted the service of the United States on June 30, 1945. The specification under the second charge is that Marino procured his discharge from the Army of the United States on the ground that he was below minimum physical induction standards, although he well knew that he had not been found to be below these standards.

The second charge sheet is dated June 22, 1945. It charges Marino with violations of the 94th Article of War. The first specification under the charge is that on January 26, 1945, he procured a certain "special order," the effect of which was to enable him to obtain mustering-out pay on the pretext that he was below minimum physical standards, although actually he knew that he was not below these standards. The second specification alleges that Marino conspired with others for the purpose of fraudulently obtaining mustering-out pay by the method which I have already described.

■ As I understand the argument supporting the application, it is that the Army authorities must prove all the facts, not only of Marino's discharge, but also of the offenses for which he is being held. Counsel urge that under United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636, it has been held that enlistment in the Army is a contract. It is then asserted that the converse must be true, and that an honorable discharge from the Army, like enlistment, has the same legal consequence as a contract.

I do not think it is necessary for me to discuss at length the effect of a discharge from the Army. I say this because one of the charges against Marino is brought under the 94th Article of War, 10 U.S.C.A. § 1566, which specifically provides that the jurisdiction of the military authorities shall survive the discharge of the person charged. Therefore, unless there is some reason why the Army authorities cannot invoke this statute against Marino their jurisdiction is complete.

I cannot, however, leave the subject of discharge without mentioning that petitioner's counsel is under a complete misapprehension on one point at least. They say that United States ex rel Harris v. Daniels, 2 Cir., 279 F. 844, 845, sheds some light on the effect of discharge, and that in this case the Court sustained a writ dismissing the relator from custody. Actually, the decision was the other way. The jurisdiction of the Navy court-martial was ultimately upheld, as reported in the volume cited.

The Daniels case arose in this Circuit, in fact, in this District. The relator, an enlisted man in the Navy, was tried on March 18, 1920, by a summary court-martial. He was sentenced to receive a bad-conduct discharge. Prior to review of the sentence it was carried out, and on March 25, 1920, the relator was in fact discharged. Later, and on June 1, 1920, he received a letter declaring that the sentence of the court-martial had been disapproved and directing him to report to the recruiting office at Scranton, Pa. He did this (under protest) and resumed his duties until July 26, 1920. On that day he returned home, and remained away from the Navy for 61 days thereafter. He then surrendered himself and was charged with

desertion during the 61 days of his absence. Relator sued out a writ, which was sustained in the District Court because it was thought that the Navy authorities at the relator's station had the right to carry out the sentence, and that the Secretary of the Navy had no power of review. The Circuit Court of Appeals reversed, saying that while there was some inconsistency among the statutes governing the power of the Secretary of the Navy to review, it was plain that in the case before the Court that power of review did exist. Hence, the original sentence was void and the Court upheld the jurisdiction of the court-martial to try relator on the charge of desertion. This was a case where no specific statute protected the jurisdiction of the military authorities after relator's discharge. In the matter at bar, there *is* a statute specifically providing that the jurisdiction of the military authorities survives discharge.

■ There are certain general principles applying to courts-martial which should be mentioned. On a review of this sort, the function of the civil court is purely to determine whether the court-martial has jurisdiction, and if so, whether it exceeded its power. Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084, 11 Ann.Cas. 640. Since courts-martial are inferior tribunals, it is true their judgments may be attacked collaterally. McClaughry v. Deming, 186 U. S. 49, 22 S.Ct. 786, 46 L.Ed. 1049. But even on a collateral attack, civil courts are limited to the inquiry whether the court-martial whose judgment is being assailed was constituted according to law, whether it had jurisdiction, whether it complied with all the statutory regulations governing it, and whether its sentence conformed to the law. Runkle v. United States, 122 U.S. 543, 7 S.Ct. 1141, 30 L. Ed. 1167.

Counsel for Marino cites two very recent cases relating to the surrender of civilians to military courts, McCune v. Kilpatrick, D.C.E.D.Va., 53 F.Supp. 80; In re Di Bartolo, D.C.S.D.N.Y., 50 F.Supp. 929. The McCune case involves the construction of the Second Article of War, 10 U.S.C.A., § 1473.[1] The relator had signed articles of agreement with the master of a steamship in the service of the United States as chief cook. After a dispute between himself and the major in charge of Army troops, the relator quit the ship. The question was whether he could be tried for this offense by court-martial, and the Court limited its inquiry to the question of jurisdiction citing among other cases Collins v. McDonald, 258 U. S. 416, 42 S.Ct. 326, 66 L.Ed. 692.

It is quite obvious that the Court had doubts whether the relator was really guilty of the offense of desertion. It nevertheless denied the application for the writ of habeas corpus because jurisdiction was found to exist.

In the Di Bartolo case, the petitioner was a civilian employee of Douglas Aircraft Company, Inc. He was charged with the theft of a diamond ring at Asmara, Eritrea, in violation of the 93rd Article of War, 10 U.S.C.A. § 1565. It was urged in opposition to the application that the military authorities had jurisdiction under the Second Article of War. Judge Rifkind said the underlying question on these matters is whether the relator "has been properly brought to justice in a military tribunal." [50 F.Supp. 932.] The inquiry, he said, must be painstaking. However, Judge Rifkind concluded that the petitioner came within the scope of the Second Article of War, and was, therefore, triable by a military tribunal.

Counsel for Marino in this matter seem to think that the last two cases which I have discussed should be read to mean that the military authorities, when their jurisdiction is challenged by the writ of habeas corpus must, in effect, prove the guilt of the relator. I believe these cases demonstrate exactly the opposite. I think they mean that even where a civilian relator held for trial by military authorities sues out a writ, the principal inquiry is whether jurisdiction exists.

■ But counsel for Marino go further. They point to the fact that under the 94th Article of War (which, as I have

[1] The Second Article of War makes amenable to court-martial certain persons who are not technically members of the armed forces such as "retainers and persons accompanying or serving with the Armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these Articles." The question in the McCune case was whether the relator came within the purview of this Article.

670

said, protects the jurisdiction of the military authorities even after the discharge of the offender) that the following language is used "and if any person, being *guilty* of any of the offenses aforesaid while in the military service of the United States, receives his discharge or is dismissed from the service, he shall continue to be liable to be arrested and held for trial and sentence by a court-martial in the same manner and to the same extent as if he had not received such discharge nor been dismissed". (Emphasis mine.) Counsel say that the meaning of this portion of the statute is that the military authorities must demonstrate the *guilt* of the person under arrest before they have a right to hold him. The counsel for Marino urge that all statutes denouncing acts as crimes are to be strictly construed, and I have no doubt that this is so.

But I do not believe that the word "guilty" must necessarily be construed in the manner suggested. If the sentence which I have quoted be read as a whole, it is quite clear that the statute, or this part of it, contemplates that the person charged ("guilty") shall be given a trial, i.e., that his guilt shall be established. It is therefore, I submit, absurd to suppose

that the military authorities must demonstrate the guilt of the offender not only at a court-martial, but also at every stage of the proceeding in which the offender avails himself of the writ of habeas corpus. It is quite obvious that if Congress meant the latter, then it was framing a statute which would serve no purpose at all.

One meaning of the word "guilty" is "justly chargeable with, or responsible for, a delinquency, crime, or sin". Webster's New International Dictionary, Second Edition, Unabridged, p. 1114.[2] I acknowledge that words more apt for the purpose could have been chosen. But the meaning of the sentence taken as a whole is quite clear. To adopt the construction contended for by the counsel for Marino would be not only to put a strained construction on the language—it would also be to produce an absurd result.[3]

I conclude that the jurisdiction of the military authorities over Marino has been established.

I asked counsel on the argument whether there was any contention about the constitutionality of the 94th Article of War, and counsel answered in the negative.

The writ is dismissed.

---

[2] See also Com. ex rel. Attorney General v. Walter, 83 Pa. 105, 108, 24 Am. Rep. 154.

[3] While I am on this subject I call attention to the fact that nearly every section of the Articles of War defining military crimes uses language which, if Marino's counsel are right in their argument about the word "guilty," would put upon the military authorities the burden of proving the commission of the crime as part of the return of a writ. Thus, for example, the 93rd Article of War, 10 U.S.C.A. § 1565, provides for punishment by court-martial of a person who "commits" a number of criminal acts thereafter enumerated. If the language of the 94th Article of War, 10 U.S.C.A. § 1566, is to be construed in the manner suggested, and the military au-

thorities must prove the defendant "guilty," then obviously the same construction must be put upon the 93rd Article of War, 10 U.S.C.A. § 1565, and the military authorities must prove that the person in custody has *committed* the crime charged, before it is entitled to hold him. Incidently, although the point was not raised, Judge Rifkind, In re Di Bartolo, D.C., 50 F. Supp. 929, was dealing with the 93rd Article of War, and dismissed the writ on proof of jurisdiction, and in the absence of proof of the commission of the crime. I make this observation to explain more fully what I mean by the statement that to adopt the construction contended for would be to produce an absurd result.