**TALBOTT**

v.

**UNITED STATES ex rel. TOTH.**

No. 11964.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 21, 1953.

Decided March 25, 1954.

Certiorari Granted Oct. 14, 1954.
See 75 S.Ct. 39.

Mr. Oliver Gasch, Principal Asst. U. S. Atty., Washington, D. C., with whom Mr. Leo A. Rover, U. S. Atty., Messrs. Edward O. Fennell and Lewis A. Carroll, Asst. U. S. Attys., and Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., at the time the brief was filed, were on the brief, for appellant. Lt. Col. Chester W. Wilson, Washington, D. C., of the bar of the Supreme Court of Wisconsin, who was allowed to appear pro hac vice, was also on the brief for appellant.

Mr. John J. McGrath, Pittsburgh, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of Court, with whom Mr. William A. Kehoe, Jr., Washington, D. C., was on the brief, for appellee.

Before EDGERTON, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

Robert W. Toth [1] was honorably discharged from the United States Air Force on December 8, 1952, after service in Korea. On April 8, 1953, he was formally charged, under the forms and procedure of the Uniform Code of Military Justice,[2] with a premeditated murder allegedly committed in Korea on or about September 27, 1952, that is, while he was in the service.[3] On May 13, 1953, he was apprehended by military personnel at his place of employment in Pittsburgh, Pennsylvania. After various events, including conversations and statements the details of which are in dispute, he was taken by military authorities by plane to Korea, where he was confined pending investigation and trial. Two qualified military counsel were assigned to represent him, and a civilian lawyer from Pittsburgh, retained by his

---

1. This action was brought in his behalf by Audrey M. Toth, his sister.

2. 64 Stat. 108 (1950), 50 U.S.C.A. § 551 et seq.

3. There were two charges, one for conspiracy to murder, in violation of Article 81 of the Uniform Code of Military Justice, and the other for commission of the murder, in violation of Article 118 of the Code, of a Korean named Bang Swoon Kil at or near the K–9 Air Base in Korea on or about September 27, 1952.

family, flew to Korea with the assistance of the Air Force.

Toth's sister filed a petition for a writ of *habeas corpus* in the United States District Court for the District of Columbia. A rule to show cause was issued; after hearing the writ was issued;[4] Toth was produced in court; a hearing was held, and Toth was ordered released.[5] The Secretary of the Air Force appealed. The order of release was stayed pending this appeal, and Toth was given liberty under bond.

■ The problem dissolves into parts. The question in the first part is whether Toth, being a civilian at the time of the filing of charges and at the time of apprehension, is amenable to trial by court-martial for crimes allegedly committed by him while he was in the military service.

Article 3(a) of the Uniform Code of Military Justice provides:

"Subject to the provisions of article 43, any person charged with having committed, while in a status in which he was subject to this code, an offense against this code, punishable by confinement of five years or more and for which the person cannot be tried in the courts of the United States or any State or Territory thereof or of the District of Columbia, shall not be relieved from amenability to trial by courts-martial by reason of the termination of said status."

We think it is clear from the quoted language that, so far as the statute is concerned, the answer to the question above posed is affirmative. The legislative history confirms that view.[6] Indeed, although appellee makes the point, which

we shall discuss in a moment, that the Uniform Code itself does not make Toth triable by court-martial, her principal point is that if the statute be construed to make Toth triable it is unconstitutional and therefore invalid.

Appellee says that Toth, being a civilian and not a soldier at the time charges were placed against him and when he was apprehended, was and is entitled to due process of law in the constitutional sense applicable to civilians. This includes the rights to indictment and trial by jury, as guaranteed by the Fifth and Sixth Amendments, and also to preliminary hearing, removal hearing, and all the other provisions of the Federal Rules of Criminal Procedure, 18 U.S.C. Due process of law in military procedure differs, of course, in material respects from due process in the civilian world.[7]

■ That a man is answerable for a crime as of the time, place and circumstance of its commission, rather than the time, place and circumstance of his apprehension, is a familiar concept of the law. If a person commits a murder in Paris, France, and is apprehended in Chicago, Illinois, he is triable in Paris under French law, not in Chicago under Illinois law. Indeed, so far as this country itself is concerned, the Sixth Amendment guarantees that an accused be tried where the crime is committed, and he is removable to that place for that purpose.

■ Trial for an offense is under the law applicable at the time of the offense, unless some other specific arrangement is dictated by the legislature. Under general principles of law a subsequent change of circumstances surrounding the accused, or in the condition in

4. Toth v. Talbott, D.C.D.C.1953, 113 F. Supp. 330. An appeal from that order was dismissed by this court July 31, 1953, as the order was not final or otherwise appealable.

5. Toth v. Talbott, D.C.D.C.1953, 114 F. Supp. 468.

6. Hearings before House of Representatives Subcommittee on Armed Services on H.R. 2498, 81st Cong., 1st Sess. 617, 800, 883–4, 902, 1262 (1949); H.R.Rep. No. 491, 81st Cong., 1st Sess. 5 (1949); Sen. Rep. No. 486, 81st Cong., 1st Sess. 8 (1949); Morgan, Court-Martial Jurisdiction Over Non-Military Persons Under the Articles of War, 4 Minn.L.Rev. 79, 83–84 (1920).

7. Burns v. Wilson, 1953, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508.

which he may find himself, does not affect his liability for an offense, unless the contrary is indicated by legislation. We see no constitutional infirmity in amenability to trial at the place of the offense and under the law applicable to the offense at the time of its commission.

The Constitution [8] gave Congress power "To make Rules for the Government and Regulation of the land and naval Forces". Congress has made such rules, and among them is the one before us. In effect this section of the Uniform Code is no more than a provision by Congress that an honorable discharge from military service shall not be an absolution for crimes theretofore committed. In substance and effect it is a general condition attached by Congress to discharges from the service. We perceive no constitutional invalidity in such a provision.

█ Both parties seek aid from the Fifth Amendment, which excepts from the requirement of indictment or presentment "cases arising in the land or naval forces". Appellee says a case arises when a charge is made; hence the case against Toth did not arise until April 8, 1953, the date the charges were filed, which was after his discharge; hence the case did not arise in the land or naval forces; hence he cannot be held to answer unless upon indictment. She relies upon the decisions which define a "case" for the "Cases" and "Controversies" clauses of Article III of the Constitution. The Government says a case arises when the crime is committed; hence the Constitution itself excepts the present case from requirement for indictment. It seems to us that, although

a crime does not become a case, *i. e.*, a legal proceeding, until a charge is made,. a case *arises* when the crime is committed; just as a man is born on the day of his birth, although he is not a man until many years thereafter. We think the case against Toth arose in the military forces. This view is in accord with the views expressed in In re Bogart [9] and Kronberg v. Hale.[10]

From 1863 [11] until the enactment of the Uniform Code of Military Justice in 1950, there was in force a statute, in several successive forms,[12] which provided that a person accused of committing fraud against the Government while in military service was amenable to trial by court-martial after his discharge from the service. The validity of those enactments has been before the federal courts several times [13] and has repeatedly been upheld. The full discussion in the opinion in the earliest of these cases, In re Bogart, supra, is both pertinent and interesting. In the latest case cited to us, Kronberg v. Hale, supra, the court remarked: "Certainly, or so it seems to us, it is now too late for any federal court short of the Supreme Court to do other than accept the provision as valid." The Supreme Court denied *certiorari*.[14]

In United States ex rel. Hirshberg v. Cooke [15] the Supreme Court discussed the 1863 statute and its successors. The question was whether a man in the Navy could be tried by court-martial for a maltreatment of prisoners allegedly committed by him during a prior enlistment at the end of which he had been discharged. The applicable statute was one of the Articles for the Government

8. Art. I, § 8, cl. 14.

9. C.C.Cal.1873, 3 Fed.Cas. p. 796, No. 1,596, 2 Sawy. 396.

10. 9 Cir. 1950, 180 F.2d 128, 131.

11. 12 Stat. 696.

12. Article of War 60, Rev.Stat. § 1342 (1878); Article of War 94, 41 Stat. 805 (1920), amended, 62 Stat. 640 (1948); Art. 14 (Eleventh) of Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Art. 14 (Eleventh) (1928).

13. In re Bogart, supra; Ex parte Joly, D.C.S.D.N.Y.1922, 290 F. 858; Terry v. United States, D.C.W.D.Wash.1933, 2 F.Supp. 962; United States ex rel. Marino v. Hildreth, D.C.E.D.N.Y.1945, 61 F.Supp. 667; Kronberg v. Hale, supra.

14. 1950, 339 U.S. 969, 70 S.Ct. 987, 94 L.Ed. 1377.

15. 1949, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621.

of the Navy,[16] the language of which was not specific on the point. The Court based its decision upon its interpretation of that statute. In doing so it stressed the difference between the ambiguous language before it and the clear provisions of the 1863 and similar acts. The Court did not discuss or pass upon the constitutionality of those statutes. The significant thing to us in our present problem is that it did not mention the subject. It pointed to the 1863 statute *et alia* as containing clear provisions that an ex-service man remained amenable to trial by court-martial for certain offenses committed while in the service, but it did not so much as intimate that such a provision might be unconstitutional. It seems certain that, if the Court had had doubts of the constitutional validity of the 1863 act and its successors at the time it was discussing those statutes in the manner it did in the Hirshberg case, it would have indicated those doubts. After all, the invalidity of statutes in force for some eighty-five years and repeatedly upheld by federal courts would be noteworthy in any discussion of the subject. To be sure, such a negative feature of an opinion is not binding authority, but it is certainly a feature of the state of the law upon the topic. We note the fact.

If the statute of 1863 and its successors were valid constitutionally, Article 3(a) of the Uniform Code of Military Justice is valid. The fact that the old statute was applicable to only one crime, while the new one is applicable generally, makes no difference upon the constitutional question.

▮ Appellee contends that Article 3 (a) of the Uniform Code does not apply to Toth, because, she says, he can be tried in a court of the United States for the offenses with which he is charged. The argument may be stated as follows, although it is not thus arranged in the brief: Murder committed at a place within the special territorial jurisdiction of the United States is an offense against the United States.[17] Any land reserved or acquired for the use of the United States and under the exclusive or concurrent jurisdiction thereof is within the special territorial jurisdiction of the United States.[18] Toth was accused of a murder committed at or near K–9 Air Base, which was in the Republic of Korea. At this point in the argument appellee makes an assertion, which is merely an assumption, that air bases used by the United States Air Force in Korea in 1952 were lands reserved for the use of the United States and under the exclusive or concurrent jurisdiction thereof. Offenses against the United States committed out of the jurisdiction of any particular state or district are to be tried in the district where the offender is found.[19] It follows from this argument, says appellee, that Toth can be tried in the federal District Court for the Western District of Pennsylvania, where he was found, and is therefore not amenable to trial by court-martial.

No authority is cited to us to indicate that K–9 Air Base or any other land in South Korea used as an air base by the United States armed forces was or is, legally speaking, reserved for the use of the United States (or even of the United Nations) or under its exclusive or concurrent jurisdiction, and our research has failed to reveal any authority to that effect. It does not appear, therefore, that the offenses with which Toth is charged could be tried as offenses against the United States within the jurisdiction of a District Court.[20] So far as the United States is concerned, the offenses appear to have been violations of Articles 81 and 118 of the Uniform Code of Military Justice, which provide that any persons in the military

16. 34 U.S.C.A. § 1200, Art. 8.

17. 18 U.S.C. § 1111(b).

18. 18 U.S.C. § 7(3).

19. 18 U.S.C. § 3238.

20. See United States v. Bowman, 1922, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149; The Schooner Exchange v. M'Faddon, 1812, 7 Cranch 116, 11 U.S. 116, 3 L.Ed. 287.

service who commit murder or conspire to commit murder shall be punished as a court-martial may direct.

■ The second part of the general problem on this appeal is whether the basic principles of due process of law require that a civilian accused in court-martial charges be given a hearing— call it either preliminary or removal— by a magistrate before he is transported so great a distance as from Pittsburgh, Pennsylvania, to the Republic of Korea. It is not urged that such a requirement applies to a person who is in the service at the time of his apprehension; obviously such a person is subject to orders to go wherever his superiors direct. The contention is that such a requirement, characterized by counsel as a minimum procedural safeguard, attaches to a civilian.

This contention as to preliminary hearing really falls into two parts. The first concerns a hearing preliminary to trial. The second concerns a hearing preliminary to removal to the place of trial. In criminal cases in the courts the constitutional requirement for indictment affords opportunity for inquiry by an independent tribunal into probable cause before the accused is put to his defense. The Constitution specifically excepts cases arising in the land or naval forces from the requirement of indictment. But the Uniform Code of Military Justice makes elaborate provisions for preliminary hearing before the accused is put to trial. Article 32 of the Code provides that charges shall not be referred to a general court-martial for trial until a "thorough and impartial" investigation has been made. At such "investigation" the accused has the right to counsel, civilian or military, and full opportunity to cross-examine witnesses against him and to present anything he may desire in his own behalf. If the charges are then forwarded, a statement of the substance of the

testimony taken on both sides must accompany them. Article 34 provides that before directing trial the convening authority must secure the consideration and advice of his legal officer and shall not refer a charge for trial unless he has found that the charge is warranted by the report of the evidence upon the investigation. These provisions of the Uniform Code seem to afford an accused as great protections by way of preliminary inquiry into probable cause as do requirements for grand jury inquiry and indictment. The record indicates, and indeed we must assume in the absence of showing to the contrary, that Toth will be afforded the full protection provided by the Uniform Code. Thus the basic purpose of a hearing preliminary to trial is being met by a method designed pursuant to constitutional provisions, and the method meets all elements essential to due process in that feature of the proceedings.

■ The main burden of appellee's contention is that Toth is entitled to a preliminary hearing before removal. Such a requirement might exist by reason of constitutional provisions or by reason of statutory provisions. "There is no constitutional right to a hearing in advance of removal", the Supreme Court said in United States ex rel. Kassin v. Mulligan.[21] And again the Court said, "The Constitution does not require any preliminary hearing before a person charged with a crime against the United States is brought into the Court having jurisdiction of the charge."[22] We must deem it settled then that there is no constitutional necessity for hearing prior to removal to the proper place for trial.

There is no statutory requirement for a hearing before removal in military cases. The 1863 statute and its successors provided that an accused "shall continue to be liable to be arrested and held * * * in the same manner and

21. 1935, 295 U.S. 396, 400, 55 S.Ct. 781, 79 L.Ed. 1501 (opinion by Mr. Justice Butler).

22. United States ex rel. Hughes v. Gault, 1926, 271 U.S. 142, 149, 46 S.Ct. 459, 70 L.Ed. 875 (opinion by Mr. Justice Holmes).

to the same extent as if he had not been so separated therefrom", *i. e.*, from the service.[23] We do not find any similar provision in the Uniform Code, but neither does the Code contain a requirement for hearing prior to removal to the place of trial.

In the federal courts hearings prior to removal are required by Rules 5 and 40 of the Federal Rules of Criminal Procedure, 18 U.S.C., but those Rules do not apply to court-martial proceedings.

Appellee cites to us the rule of the McNabb case.[24] That rule dealt with the admissibility of confessions. It is clear from the opinion in that case and the opinions in the Mitchell[25] and Upshaw[26] cases that the requirement for prompt preliminary hearing was imposed by the Supreme Court as a rule of evidence in the federal courts and not as a rule of constitutional necessity.

Section 11(b) of the Manual for Courts-Martial[27] provides: "Jurisdiction under Article 3a should not be exercised without the consent of the Secretary of the Department concerned." "Article 3a" is the part of the Uniform Code with which we are presently concerned. Section 11(b) of the Manual is a safeguard interposed by the President[28] against the arbitrary subjection of civilians to trial by courts-martial for offenses committed while they were in the service. This provision has been complied with in the present case.

Most important in this connection is the fact that the federal courts were open to Toth upon petition for a writ of *habeas corpus* at every instant after his apprehension.[29] Whatever constitutional rights Toth had were always enforceable in a federal court.

It is well to keep in mind that the sole purpose of a removal proceeding is to make certain that the accused is not being transported without probable cause to believe that he committed the offense. It is not its purpose to impede the trial of an accused for an offense for which there is reason to put him to his defense. So, when discussion relates to the inconvenience, cost, etc., of long-distance removals, it must be remembered that the inconvenience, etc., which is to be condemned relates only to removal without probable cause. If there be probable cause to believe the accused guilty, he is amenable to trial, and the inconvenience to him of that trial is immaterial. An accused cannot interpose valid objections to trial by removing himself a long distance from the scene of the alleged offense.

We are accustomed to the idea that a hearing preliminary to removal out of this country for crime is essential to a valid removal. But that idea stems from our familiarity with extradition proceedings. In those proceedings one sovereignty is transferring to the custody of another sovereignty a person found within the former state. A responsibility is upon the asylum state not to surrender its resident or visitor without probable cause. The matter is controlled by extradition treaties or statutes. But none of those principles applies to a case like the present one. Here *it is not proposed to remove the accused from the custody of the United States Government.*[30] The United States apprehended him, and the United States proposes to try him. The removal is a matter of distance, not a matter of jurisdiction.

Toth has not urged that due process requires that he be given a hear-

---

23. See 62 Stat. 641 (1948).

24. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

25. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

26. Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100.

27. 16 Fed.Reg. 1303, 1308 (1951).

28. Exec.Order No. 10214, 16 Fed.Reg. 1303 (1951).

29. Burns v. Wilson, supra note 7.

30. Beavers v. Henkel, 1904, 194 U.S. 73, 24 S.Ct. 605, 48 L.Ed. 882.

ing before a civil tribunal prior to being subjected in any way to the jurisdiction of a military tribunal. We have considered that question, however, because we think it may be a more fundamental inquiry in this case than the question whether Toth is entitled to a hearing before being removed from the territorial limits of this country. But we have found no principle or precedent which would make a civilian hearing a constitutional prerequisite of military jurisdiction over Toth. Ex parte Milligan[31] no doubt stands today for the proposition that if the military authorities lack jurisdiction over a civilian *habeas corpus* will effectuate his release at any stage of his confinement. But neither that case nor those following it contain any suggestion that if the military authorities do have jurisdiction over a civilian there must be a preliminary hearing before a civil tribunal to make his apprehension by those authorities and trial before a military tribunal constitutionally valid.

Cases arising under the draft laws are not helpful. If the relator has never been "actually" inducted into the army within the meaning of the governing statute, *habeas corpus* lies to challenge his purported induction and bring about his release.[32] In such cases the induction is the dividing line between civil and military jurisdiction. But in the present case there is no attempt to put Toth back into the armed services. He is a civilian who is to remain a civilian, even though for certain restricted purposes Congress has declared that civilians in his category are to remain subject to military law and trial before military tribunals. Military trials of civilians and other non-members of the armed services in limited classes of cases antedate our Constitution.[33] It may be

that Congress cannot in time of peace add to those classes of cases by making civilians subject to military justice in cases not "arising in the land or naval forces" within the meaning of the Fifth Amendment. But that question is not before us now. All Congress has done here is to deal with a class of cases which did arise in the armed services. As pointed out earlier in this opinion, it is too late for any court other than the Supreme Court to say that its action in so doing was unconstitutional, even though no provision was made for a hearing before civilian authorities prior to the subjection of the accused to military law.

Some suggestion is made that the question of hearing is moot, since Toth is now before a federal court and has had a hearing. In so far as Toth's claim relates to rights which arose from the fact of his apprehension and his initial removal from this country, perhaps it is moot. He has had opportunity to present such a claim to a court. But, in so far as his claim is upon other grounds, involving amenability to military authority or attacking military processes, it is not moot. Certainly we cannot say that the whole hearing problem as Toth presents it is moot.[34]

The trial court expressed the view that there is no power or authority to remove a civilian for trial by court-martial to a point distant from the place where he is apprehended.[35] We think, as we have indicated at length, that the statute which makes a civilian amenable to trial by court-martial necessarily connotes authority to apprehend him for that purpose and to remove him for trial to the place where the alleged offense was committed.

It may very well be that Congress should add to the Uniform

31. 1866, 4 Wall. 21, 71 U.S. 2, 18 L.Ed. 281.

32. See Billings v. Truesdell, 1944, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

33. Cf. Ex parte Quirin, 1942, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3.

34. See Eagles v. U. S. ex rel. Samuels, 1946, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308.

35. Supra note 5, 114 F.Supp. at page 470.

Code a provision that a civilian apprehended under Article 3(a) pursuant to court-martial charges should not be removed from continental United States for trial until he has had a preliminary hearing before either a civil magistrate or a military tribunal. After all, transposition from civilian life back into military life and transportation from continental United States to far places of the earth are violent events, even though it be to an accused's benefit to be tried at the place where the crime is alleged to have been committed. And from the standpoint of the military establishment a routine authoritative inquiry prior to drastic removal steps would save time, expense and complications, if in the absence of such an inquiry the federal courts are likely to order an accused returned, as was done in the case at bar. But such questions are for Congress, not for the courts. The Constitution put the government of the land and naval forces in the hands of the legislative branch, not of the judicial branch. Absent constitutional invalidity in legislative action, or in executive action purportedly pursuant to legislative direction, the courts have no function in that field. Therein the situation differs from that in the field of court proceedings, where the Supreme Court has supervisory authority over procedure.

 The sum of the matter as to a removal hearing in military proceedings is (1) that the Constitution does not require one, (2) that no statute requires one, and (3) that the judicial branch of government has no power to require one. When an accused alleges to a court that he is actually threatened with removal in violation of a constitutional or statutory right, the court will hear him. The situation is illustrated by the present case, in which the accused upon petition to a court was given a hearing upon the constitutional validity of his apprehension and removal. But the court cannot consider alleged procedural invalidity in military proceedings which do not involve a violation of constitutional or statutory requirements.

 It is suggested that Articles 3 (a) and 9(c) of the Uniform Code are inconsistent with each other. The latter Article provides that a civilian subject to the Code "may be ordered into arrest or confinement only by a commanding officer to whose authority he is subject". But "arrest or confinement" in military parlance is a restraint by order, as contrasted with a taking into custody, which is termed "apprehension". A strict distinction between the two is made in military rules.[36] We see no inconsistency between the Articles.

Assertions that fundamental precepts of that fair play which constitutes so much of the American sense of due process of law have been violated, always arouse interest and particular care. So it is in this case. But we must be mindful that this man is accused of committing a premeditated murder while in uniform and that the line of authority which proposes to subject him to trial upon that accusation is a legal authority acting under rules established by the Congress itself under direct authority of the Constitution itself. We have examined his contentions with care. We can perceive no constitutional reason why his liability to apprehension and trial *according to the rules applicable to him at the time and place of the commission of the crime* should not follow him to other places and past his discharge into civilian life. If we found the provisions of those rules inherently invalid, or the officials abusing their authority, we would exercise our power of protection. We do not find them so.

The judgment of the District Court will be reversed and the case remanded with instructions to discharge the writ and to return Toth to the custody of the military authorities.

Reversed and remanded.

36. See Secs. 18–21 of the Manual for Courts-Martial, 16 Fed.Reg. 1310–1311 (1951).